**In re John Allen VANN, Debtor.**

**Bankruptcy No. 88 B 11859 J.**

United States Bankruptcy Court,
D. Colorado.

April 10, 1990.

Paul G. Quinn, Denver, Colo., for Trustee, Andrea S. Berger.

Nancy D. Miller, Nancy D. Miller P.C., Andrew L. Quiat, Andrew L. Quiat, P.C.,

and Glen E. Keller, Jr., Davis, Grahm & Stubbs, Denver, Colo., for debtor.

Peter J. Lucas, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for Metro Nat. Bank.

Kris E. Jukola, Hall & Evans, Denver, Colo., for Capitol Federal Sav. and Loan Ass'n.

Holly E. Rebstock, Rebstock & Kelley, Denver, Colo., for First Colorado Bank & Trust.

Andrew L. Quiat, Andrew L. Quiat P.C., Denver, Colo., for C. Jill Vann.

Marcia S. Krieger, Wood, Ris & Hames, P.C., Denver, Colo., for Christopher L. Phillips.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH,
Bankruptcy Judge.

THIS MATTER came on for hearing on June 14 and 15, 1989. At the conclusion of the Hearing the Court ordered that briefs in lieu of closing argument be submitted and on July 17, 1989, set out a briefing schedule. On August 29, 1989, the Court gave the Debtor an extension of time to file his brief to 10 days after receipt of the transcript of the hearing. After some delay in obtaining the transcript it was ready for the Debtor to pick up on February 20, 1990. When the Debtor did not pick up the transcript the Court issued its Order on February 27, 1990, which provided that the ten-day time period set out in the August 29, 1989 Order was to begin forthwith. The briefs have now been submitted and the matter is at issue.

The Debtor filed his Chapter 7 petition on September 2, 1988. On September 19, 1988, he filed his Statements of Financial Affairs (for both a debtor engaged in business and not engaged in business) and Schedules. He listed total Debts of $3,935,402.16 and total assets of $934,-594.93. On his Schedule B–4 he claimed as exempt, *inter alia,* "Debtor's household goods—Used by Debtor See Schedule B–2(c)—§ 13–54–102(1)(e)—$1,500.00." He did not claim on his Schedule B–4 as ex-empt any Deferred Compensation Plans, but he did state on his Schedule B–3—Property Not Otherwise Scheduled, the following: "Dean Witter Deferred Compensation Plan (Debtor believes this Plan is exempt from his estate and lists it only for completeness)." No value was indicated.

On Schedule B–2(c) he lists personal property valued at $1,175.80 located at 5822 S. Sheridan Blvd., Littleton, Colorado; personal property valued at $2,062.50 located at 48–880 Eisenhower Drive; personal property valued at $200.00 for his 25% interest in the property previously located at "Breckenridge Condominiums"; personal property allegedly owned by his wife, C. Jill Vann (no value given); and "Items distributed to C. Jill Vann upon Separation and Currently held by J. Vann as marital property" (No value given). The only property for which values were given for each piece of personal property was for that property located at 5822 S. Sheridan Blvd.

On January 20, 1989, the Debtor filed an amendment to his B–4 Schedule wherein he claimed as exempt the following: "Dean Witter Deferred Compensation Plan—House Bill # 1237, 15 U.S.C. § 1673, C.R.S. 13–54–104." The value claimed as exempt was listed as "as applicable". This amendment followed closely on the heels of the Objection to Claim of Exemption filed by Metro National Bank on January 4, 1989, and the Objections to Claim of Exemptions filed January 6, 1989, by Christopher L. Phillips, by Capitol Federal Savings & Loan Association and by the Trustee. First Colorado Bank & Trust filed its objection to exemptions on March 6, 1989, after having received an extension from the Court to do so. Debtor amended his Statement and Schedules several times, to wit: October 13, 1988 (Statement and A–3 Schedule); October 20, 1988 (B–2 Schedule); November 4, 1988 (A–3 Schedule); December 2, 1988 (A–3 Schedule); and January 20, 1989 (Statement, A–2, A–1 and B–4 Schedules).

### Household Goods

Facts relevant to the Debtor's claim of exemption to household goods are as fol-

lows. The Debtor testified that he entered into an understanding with his wife regarding a division of personal property between them about 60 to 90 days prepetition. The agreement was that he would keep all of the Palm Springs household goods (which he claimed were subject to a lien granted to Capitol Federal Savings in February, 1988, and his wife would take the bulk of the household goods on S. Sheridan Blvd (which were unencumbered). The day after he filed his Chapter 7 petition, the Debtor and his wife filed a petition for legal separation in state court. No action has been taken with respect to that petition. Although the Debtor and his wife were separated on the date of filing of the bankruptcy petition, they reconciled within 45 days after filing and have resided together since that time in Plano, Texas. All of the household goods listed as belonging to each of them are present at their current address. Despite this reconciliation, no amendment has ever been made to the Debtor's Schedules to reflect the physical return of this property to him. The Debtor moved his personal property, as well as that which allegedly belonged to his wife, from Colorado to Texas without informing the Trustee of his intention to move. When the Trustee discovered that the property was about to be removed from Colorado, it was being packed and loaded on moving vans. The Trustee obtained a temporary restraining order delaying the movement of the moving vans. The Debtor and the Trustee subsequently agreed that the Debtor would pay for an appraiser to inventory and appraise the property as they were unloaded in Texas, and, therefore, the vans were allowed to proceed to Texas. When the appraiser attempted to appraise the property as it was unloaded from the moving vans in Texas, the Debtor would not let him properly, fully, and completely inspect the property. He refused to let the appraiser in the house to open over 100 boxes of personal property or to inspect the furniture to determine its age and condition. Because the appraiser had not been able to inspect the property the Court at the instant hearing refused to admit his opinion of value. The granting of the security interest to Capitol Federal Savings is not listed as a transfer made within the year prior to the filing of bankruptcy in response to Question 12(b) on the Debtor's Statement of Affairs.

■ It matters not whether the Debtor and his wife have reconciled or whether the wife claims some interest in all the household goods because of the filing of the separation petition in state court. Until a dissolution of marriage is commenced and the spouse takes some affirmative action to perfect her interest in the marital property, her rights are inchoate, and had a judgment lien creditor perfected its lien on the property prior to the spouse's perfection, her rights to the marital property would be subordinate to those of the judgment lien creditor. Under 11 U.S.C. § 544 the Trustee stands in the shoes of a perfected judgment lien creditor and the wife here has no claim superior thereto. *In re Tucker*, 95 B.R. 796 (Bankr.Colo.1989). Thus, no "understanding" between the Debtor and his wife as to which property was hers and which was his will be given any effect by this Court.

■ Creditor Phillips argues that the Debtor's claimed exemption in household goods is ineffective because he does not specifically identify the property which he claims as exempt and relies on *In re Ogden & Wilcox*, 114 B.R. 730 (Bankr.D.Colo. 1989); and *In re Andermahr*, 30 B.R. 532 (9th Cir.B.A.P.1983). Although the Debtor has amended his schedules and Statements several times, he has not amended them to designate which household goods he claims to be exempt. The Court cannot discern whether the Debtor meant to exempt the property on S. Sheridan, the property at 48–880 Eisenhower Drive, or the property allegedly given to his wife that was previously located at the Breckenridge Condominiums. From his testimony at the hearing it could be implied that he meant the property at 48–880 Eisenhower Drive because that is the property that he shows as secured by Capitol Federal Savings. However, he does not list any values for each piece of property at that location, only a total value of $2,062.50, which exceeds the

statutory exemption amount of $1,500.00. It is far from clear which property the Debtor believes is exempt. Therefore, under *Ogden & Wilcox* and *Andermahr, supra,* the Debtor's claim of exemption as to household goods must be denied.

But there is even a more compelling reason to deny the exemption for household goods. The creditors here objected to this claimed exemption and attempted to present value testimony concerning the property but were prevented from doing so by the actions of the Debtor. The appraiser's opinion of value could not be admitted because he had not adequately inspected the property, which he was prevented from doing *by the Debtor.* Thus, the Court is without sufficient evidence to determine the value of the property which the Debtor claims as exempt. The debtor does not value all of the personal property listed on his B–2 Schedule[1] and has deprived the Trustee and the Creditors of an opportunity to inventory and value such property. Without a determination of value, the Court cannot determine whether specific property falls within the exemption claimed. As a consequence the exemption must be denied.

### Deferred Compensation

■ At the time Debtor filed his Chapter 7 petition, he held an interest in the Dean Witter Reynolds, Inc., Capital Accumulation/Deferred Compensation Agreement Plan No. 39245–4. At that time his employer, Dean Witter, maintained three sub-accounts for his benefit which contained the following amounts:

| | |
|---|---|
| Post 1983 Account – | $122,394.40 |
| 1986 Account – | 45,996.85 |
| Post 1986 Account – | 117,698.77 |
| Total | $286,090.02 |

The first question that must be answered is whether the Debtor's interest in the Plan is property of the estate under 11 U.S.C. § 541. Section 541(a) is all inclusive and provides, basically, that *all* interests of the Debtor, legal and equitable, become property of the estate upon the commencement of a case under Title 11, U.S.C. Having thus spoken, Congress then proceeds to whittle away and refine that broad definition in subsection (b), (c), and (d) of § 541.

Section 541(c) specifies that, notwithstanding any provision in an agreement or instrument that restricts or conditions transfer by a debtor of an interest, such interest is nevertheless property of the estate, *EXCEPT* that a restriction on the transfer of a beneficial interest of the debtor in a *trust* that is enforceable under state law is enforceable in bankruptcy. Does the Plan amount to a "trust?" Except for the fact that the plans were created for the benefit of public employees, the cases of *In re Huff,* 42 B.R. 553 (Bankr.N.D.Ill.1984), *appeal dism.* 61 B.R. 678 (N.D.Ill.1985) and *In re Osburn,* 56 B.R. 867 (Bankr.S.D. Ohio 1986) are directly on point. The Plan is not a "trust." It is a simple contract whereby the employee becomes a creditor of his employer for compensation earned but not yet paid. In fact, "earnings" is defined in C.R.S. § 13–54–104(1)(b) to include deferred compensation plans. This would indicate that the State of Colorado likewise does not consider such deferred compensation plans as "trusts." Thus, § 541(c)(2) does not come into play. Clearly the Debtor's interest in the Plan became property of the estate upon the commencement of the case. Under C.R.S. § 13–54–104(2)(a) 75% of these earnings, i.e. the principal amounts deposited into the Plan, would be exempt.

■ Metro National Bank ("Metro") argues that the Debtor is not entitled to this 75% exemption because: (1) he failed to claim the exemption in a timely manner; and (2) the Debtor's pre- and post-petition conduct has worked a waiver of the exemption.

Under *Redmond v. Tuttle,* 698 F.2d 414 (10th Cir.1983) a Debtor may, in accordance with present Bankruptcy Rule 1009, amend any voluntary petition, list schedule, state-

---

1. Contrary to the Debtor's assertion that the B–2 Schedules are in conformity with 11 U.S.C. § 522(1) and Bankruptcy Rule 4003(a), these schedules do not list the market value of the Debtor's interest in the property shown.

ment of financial affairs, etc., as a matter of course at any time before the case is closed. The effect of such an amendment, however, must be decided by the court. In the *Redmond* case, *supra,* the 10th Circuit affirmed the lower courts' determination that the property in that case could not be exempted.

Under C.R.S. § 13–54–104(2)(a) only 75% of the principal sums in the Plan were exempt. However, the Debtor failed to initially claim this exemption. He never did amend his schedules to show the amounts in the Plan. He filed his petition on September 2, 1988. Sometime in December, 1988, he exercised his election under the Plan to withdraw the funds ($122,394.40) from the Post 1983 sub-account. His testimony on three different occasions concerning this election has been different all three times. In his examination under Bankruptcy Rule 2004 on December 19, 1988, he said no election had been made. In a hearing before Judge Matheson of this Court on February 2, 1989, he said he executed the election form a "day of so after the deposition [Rule 2004 exam]." Then before this judge he said he executed the form on December 15, 1988, neglected to give it to the Trustee herein on December 19, 1988, and then finalized the form after the Rule 2004 exam. In any event, the Debtor did not notify the Trustee until January 10, 1989. By that time he had already withdrawn the money. The Trustee immediately filed a complaint and motion for a temporary restraining order. By the time the matter came on for hearing before Judge Matheson, the Debtor had dissipated all but about $25,000.00 of the funds withdrawn. The Debtor has likewise made subsequent withdrawals from the Plan since the date of the hearing herein without prior adequate notice to the Trustee. The Trustee attempted to obtain an injunction stopping the withdrawals when she learned about them, but these efforts were denied by the Court for procedural defects. Nevertheless, counsel for the Debtor acknowledged that the withdrawals had, or would take place and that the Debtor understood this Court's previous warnings that if the exemption issue were decid-

ed against the Debtor, the Debtor would have to reimburse the estate. Since December, 1988, or January, 1989, the Debtor has known that the Trustee disputed his claim that the funds in the Plan were not property of the estate and that the Trustee and creditors disputed his claim to an exemption in those funds. Yet he has consistently dealt with the funds as though these objections did not exist.

Thus, acting at his peril, the Debtor has withdrawn not only the allowed 75% of the funds, he has also withdrawn the clearly non-exempt 25%. The Reply Brief of Metro accurately sets forth the law when it is stated on p. 7:

If the Court determines that the Plans constitute property of the estate, Mr. Vann risks having improperly dealt with property of the estate in violation of 11 U.S.C. § 727(a)(2)(B). Whether the property is determined to be exempt is irrelevant. Until a determination is made regarding the validity of the exemption, the Debtor has no authority to deal with property of the estate. *In re Kasishkie* [*Kasishke*], 40 B.R. 712 (Bankr.N.D.Rex. [Tex.] 1984) ... See also: *Green [Greene] v. Balaber–Strauss,* 76 B.R. 940 (S.D.N.Y.1987) ... See also: *In re Kaufman,* 68 B.R. 391 (Bankr.S.D.N.Y. 1986) ...

As is clear from the foregoing cases, it is the trustee who is to administer both non-exempt as well as exempt property of the estate. The trustee has a duty to recover and administer all property of the estate. Under § 522(g), the Debtor cannot claim an exemption in the recovered property which was voluntarily transferred. *Redmond v. Tuttle,* 698 F.2d 414 (10th Cir.1983).

The Debtor has been less than candid with the Trustee or the creditors herein concerning the Plan. He has consistently treated 100% of those funds as his sole, separate property. He has taken every opportunity to withdraw those funds surreptitiously and without notice to the Trustee, and dissipated the funds before the Trustee could assert her rights in this Court. Under these circumstances, and es-

pecially in light of the fact that the Debtor has withdrawn not only his purportedly exempted 75% of the funds, but also the 25% which clearly belonged to the estate, this Court finds that the Debtor's claim of exemption to the funds in the Plan must be denied.

The Debtor also claimed a 75% exemption to the "avails" of the Plan under C.R.S. § 13–54–104(1.1). "Avails" under that statute is defined to mean "profits or proceeds." The creditors herein challenge that claimed exemption arguing that this statute is unconstitutional because it applies "only for the purpose of claiming an exemption in bankruptcy." On July 17, 1989, this Court issued its Order, Notice and Briefing Schedule. In that Order the Court gave notice to the State of Colorado under 28 U.S.C. § 2403(b). However, upon review, the Court has discovered that this Order, Notice and Briefing Schedule was never sent to the Attorney General for the State of Colorado by the Clerk. Therefore, I will not rule on the constitutional challenge of the creditors at this time. But such a ruling is unnecessary because of the finding, *supra*, that the Debtor's conduct concerning the entire Plan has been such that, in equity, his claim of exemption to the funds in the Plan cannot be allowed. It is, therefore,

ORDERED that the Debtor's claim of exemption to the Dean Witter Reynolds Capital Accumulation/Deferred Compensation Plan is disallowed.

FURTHER ORDERED that the Debtor shall, within ten (10) days of the date of this Order return all funds he has previously withdrawn from said Plan to the Trustee herein, together with the interest as allowed on money judgments from and after the date of each withdrawal.

FURTHER ORDERED that the Debtor's claim of exemption in household goods is disallowed.

FURTHER ORDERED that the Debtor shall, within ten (10) days of the date of this Order, at his own expense, return all household goods that he previously moved to Texas, back to Denver, Colorado, to such location as the Trustee may direct so that the Trustee may administer that property of the estate.