**In re Lawrence P. RAYMOND and Valeria A. Raymond, Debtors.**

**Bankruptcy No. 90–18030 RJB.**

United States Bankruptcy Court, D. Colorado.

Sept. 17, 1991.

As Amended Oct. 17, 1991.

Steven R. Rider, Rider and Woulf, P.C., Aurora, Colo., for Region 12 Revolving Loan Fund Corp.

Tom H. Connolly, Denver, Colo., for debtors.

MEMORANDUM OPINION
AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Objections to the Debtors' claimed exemptions filed by the creditor Region 12 Revolving Loan Fund Corporation.

## HOMESTEAD EXEMPTION

■ The Debtor Valeria A. Raymond has claimed a homestead exemption in a residence owned solely by her under C.R.S. § 38–41–201. That Colorado statute provides that every household occupied as a home by the owner or his family shall be exempt up to $20,000.00.[1] The evidence showed that Valeria at the time the Debtors filed their petition was the owner of the residence and had been for several years prior thereto. The evidence also showed that at the time of filing for bankruptcy, the Debtor Lawrence Raymond had moved to Texas with the children where he took up residence near his new employment. The evidence also showed that within a few days prior to filing, Valeria had arranged for a moving company to come to the residence to pack the furniture and household goods of the Debtors. However, Valeria remained at the residence after filing and supervised the movers. The household goods were actually shipped from Colorado to Texas approximately 10 days after filing of the petition. Thus, Valeria satisfied the requirements of the statute on the date of filing, i.e. November 26, 1990. The property was later sold by the Trustee and Valeria asserted her exemption against the proceeds of that sale as she was entitled to do under C.R.S. §§ 38–41–201 and 38–41–207. Therefore, the objection to the homestead exemption is denied.

## HOUSEHOLD GOODS

Originally the Debtors did not specifically identify what constituted the "household goods" to which their claim of exemption applied. However, on or about August 22, 1991, they amended their Schedule C, as they are allowed to do under Bankruptcy Rule 1009, which identifies each item claimed and its value. The Trustee has claimed the value of this property exceeds the amount of the exemption under C.R.S. § 13–54–102(1)(e), and the Debtors are currently negotiating with the Trustee to settle this dispute. Therefore, the only objection by the creditor being that the household goods were not listed with specificity, and that defect having been cured, the objection must be denied. The Debtors are entitled to their statutory exemption up to the maximum amount of the exemption, or the value of the property, whichever is greater.

## JEWELRY

■ The creditor here raises the same specificity grounds to the Debtors' claim of exemption under C.R.S. § 13–54–102(1)(b). Even in their Amended Schedule C the Debtors only show the following: "JEWELRY § 13–54–102(1)(b) $1,000.00 [value claimed as exempt]." They indicate no current market value for the jewelry at all. The law in this district is clear. A nonspecific claim of exemptions gives the debtor no right legally or practically to the exemption. *In re Vann*, 113 B.R. 704 (Bankr.Colo.1990); *In re Ogden*, 114 B.R. 730 (Bankr.Colo.1990). Therefore, the objection to the claimed exemption to jewelry is sustained and the exemption claimed by the Debtors is denied.

## OFFICE EQUIPMENT

■ The Debtors claim, under C.R.S. § 13–54–102(1)(i), a $3,000.00 exemption for certain office equipment. That statute reads as follows:

> The stock in trade, supplies, fixtures, maps, machines, tools, equipment, books, and business material of any debtor used and kept for the purpose of carrying on any gainful occupation in the aggregate value of fifteen hundred dollars [is exempt]."

There was a substantial lack of evidence that the Debtors, or either of them, used the listed office equipment "for the purpose of carrying on any gainful occupation." Therefor, the Debtors' claimed exemption to the office equipment is denied.

## LIFE INSURANCE

■ The Debtors claim, under C.R.S. § 13–54–102(1)(*l*), $9,850.00 exempt. That statute reads as follows:

1. The statute has recently been amended to

raise the exemption to $30,000.00.

The avails of policies or certificates of life insurance to the extent of five thousand dollars [are exempt].

This court has had the opportunity to attempt to define the term "avails" under another Colorado exemption statute, i.e. C.R.S. § 13-54-104(1.1). *In re Toner*, 105 B.R. 978 (Bankr.Colo.1989). That statute concerned the exemption for "avails of any pension or retirement benefits." Unfortunately, the Colorado legislature when it attempted, for the first time, to define "avails" in that statute restricted its definition to that particular section. However, we can with some degree of certainty, borrow upon the legislature's definition in § 13-54-104(1.1), to discern its intent in a previous section under the same Article and Title, i.e. § 13-54-102(1)(*l*). In the *Toner* decision, "avails" was defined as "profits or proceeds", which were further defined as "issues; income; yield; receipts; produce; money or articles or other thing obtained by the sale of property; or the sum, amount, or value of property sold or converted into money or into other property." 105 B.R. 978, 984. The court then determined that the terms "avails" and "profits and proceeds" in that statute meant the interest or income accruing on the pension and profit sharing plans, and did not include the corpus.

Applying this same principal to the statute at hand, this Court concludes that the "avails of policies or certificates of life insurance" does not include the cash surrender value. Rather it is the fund paid over to the beneficiary at the time the policy matures, whether in a lump sum or by way of periodic payments.

Although it was interpreting an entirely different statue with a different scheme, the court in *In re Brothers*, 94 B.R. 82 (Bankr.N.D.Tex.1988), said:

In contrast, cash surrender values are more in the nature of an investment, they are not paid "under" the policy, rather they are paid to the owner if the policy is canceled, or to the beneficiary in the total proceeds paid. Cash surrender values are available to the debtor at any time he or she might wish to terminate the insurance contract, or convert the funds to paid up insurance, therefore, they are also available to the Trustee. 94 B.R. 82, 85.

This court agrees with the characterization of cash surrender value used by the Texas court. Thus, only the beneficiary of the life insurance policy who receives the insurance proceeds at the death of the insured can claim the exemption in § 13-54-102(1)(*l*).

Debtors argue that under § 10-7-106, the death benefit of a life insurance policy is fully exempt anyway, and that to limit the $5,000.00 exemption in § 13-54-102(1)(*l*) to the same proceeds would violate a fundamental principle of statutory construction, i.e. that where possible, statutes are to be given such effect that no portion is rendered superfluous or insignificant. However, Debtors misread § 10-7-106. That statute is a prohibition against anyone, except the insured, from anticipating or alienating his interest in the proceeds of the life insurance policy *if permission to do so is expressly withheld by the terms of the policy*. The statute also provides that, if the policy so provides, the interests of such person, other than the insured, cannot be subjected to such person's debts. This statute was obviously enacted for the purpose of protecting the insurance company from the expensive administrative burden that would ensue if every judgment creditor of a beneficiary were to serve garnishments on the company and to provide certainty to the company as to whom it should pay the proceeds upon the death of the insured.

If such a statute were not in effect, the insurance companies would be hopelessly confused. For example, assume John Doe is the beneficiary of a life insurance policy. Doe's judgment creditor garnishes the company. The owner of the policy then removes Doe as a beneficiary. Would this defeat the garnishment? What if, at a later time, Doe is again made a beneficiary? Would the judgment creditor's claim still be valid, or would he have to institute new process against the insurance company. Simply put, C.R.S. § 10-7-106 is

**56**

not an exemption statute. Had Colorado wanted to make a clear exemption for *all* life insurance proceeds they certainly knew how to do it. See C.R.S. § 10–7–205 which specifically exempts the proceeds of *group* life insurance policies. The legislature did not provide for such a clear exemption in C.R.S. § 10–7–106. In addition, the policies in question were not offered into evidence and this Court has no way to determine if the provisions of that statute have been activated by specific language in the policies.

In this case there are two policies. The first is with General American Life, and it can be characterized as the "garden variety" life insurance contract, i.e. the insurance company agrees to pay the face amount of the policy to the beneficiary upon the death of the insured. This policy is covered under the discussion, *supra.*

The second policy is with Pacific Fidelity and provides that the company will pay a monthly annuity to the Annuitant (in this case to Valeria A. Darling [Raymond], commencing June 1, 2010, and continuing until her death. If she dies while the contract is in force and prior to the commencement of the monthly annuity payments, the company will pay a death benefit to the beneficiary.

Debtors argue that this annuity policy is a "life insurance" policy under the exemption statute because it provides for a death benefit. However, the court determines that just because an annuity contract provides for disposition of a residual sum upon the death of the annuitant, does not make it a life insurance policy. The common usage of the terms "life insurance policy" and "annuity" commands that they are different. And the Colorado statutes command that "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." C.R.S. § 2–4–101. Debtors argue that because the Colorado statutes that regulate deferred annuity contracts are contained in the same Article as the regulations for life insurance, that the legislature intended to include annuities in the definition of life insurance contracts. But the Debtors also admit that Colorado has *not* provided for an all purpose definition of life insurance in its statutes. "Life insurance" as it is commonly understood, pays benefits to designated beneficiaries *upon the death of the insured* and are for the benefit of the insured survivors. "Annuities," on the other hand are for the primary benefit of the annuitant *during his life.* These common definitions and understandings must prevail in the absence of a clear definition from the legislature. But even if an annuity is a life insurance policy, the cash surrender or loan value would not be exempt. Therefore, the Debtors' claims of exemption on these two contracts are denied. It is, therefore,

ORDERED that the Debtors' claims of exemption are sustained as to the homestead exemption and the household goods. The debtors' claims of exemptions for the office equipment, jewelry, life insurance contract and annuity contract are denied.