**In re Sohail ANJUM, Debtor.**

**Iffat Ara (formerly Iffat Sohail), Plaintiff,**

**v.**

**Sohail Anjum, Defendant.**

**Bankruptcy No. 02 B 22070(ASH).
Adversary No. 02–5263A.**

United States Bankruptcy Court,
S.D. New York.

Jan. 14, 2003.

Peter A. McGarry, White Plains, NY, Pro bono attorney for Plaintiff.

Laurence Y. Solarsh, White Plains, NY, for Defendant.

### *DECISION DENYING SUMMARY JUDGMENT*

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

The issue considered on this motion for summary judgment is whether an equitable distribution provision in a post-petition Judgment of Divorce based on a pre-petition Stipulation gives rise to a pre-petition claim which is discharged in the debtor's Chapter 7 case, or a post-petition claim which is not discharged. The issue turns upon the fact that equitable distribution is in the nature of a distribution of *property.* Hence, analysis must focus on whether the *property* which was the subject of a money judgment for equitable distribution became property of the debtor's estate on the date of filing.

In this case the property which was the subject of the equitable distribution decree became property of the debtor's estate upon the filing of his Chapter 7 petition. The subsequent entry of the Judgment of Divorce for a fixed dollar amount gave rise to an unsecured pre-petition claim entitled to share in the liquidated assets of the debtor's estate *pari passu* with other pre-

petition unsecured claims.[1] And, like other pre-petition claims, this claim will be discharged unless declared non-dischargeable under 11 U.S.C. § 523(a).

## *Jurisdiction*

This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a core proceeding under 28 U.S.C. § 157(b).

## *Facts*

Plaintiff Iffat Ara (formerly Sohail) ("Iffat") is the former wife of debtor-defendant Sohail Anjum ("Anjum" or "debtor"). In 2000 Anjum commenced an action for divorce in the Matrimonial Part of the Supreme Court of the State of New York, County of Westchester, seeking a divorce by reason of constructive abandonment. Iffat answered and filed a counterclaim for divorce by reason of cruel and inhuman treatment. The action was assigned to Justice Fred I. Shapiro.

At the time the divorce action commenced, Anjum owned 75% of the shares of S & N Enterprises, Inc., a dry cleaning establishment doing business under the name Purdy Cleaners in Rye, New York. Anjum was employed by S & N, worked full-time at the store and derived his entire income from the cleaning business.

In the course of the divorce action Justice Shapiro appointed an independent accountant to value the business of S & N for purposes of the divorce. The accountant valued the business at $52,500. Neither Anjum nor Iffat expressed any objection to or disagreement with the $52,500 valuation of S & N. Anjum states in his affidavit in opposition to Iffat's motion for summary judgment that "I did not agree with the valuation but I had no basis upon which to challenge it." His affidavit continues: "So, after much discussion with my divorce attorney, I agreed on November 21, 2001 to enter into an agreement with [Iffat] to resolve the matter of equitable distribution."

An agreement with respect to equitable distribution was reached but was never reduced to a writing signed by the parties. Instead, on November 21, 2001 Iffat and Anjum and their attorneys met at the County Courthouse at a hearing before Justice Shapiro. Counsel, with considerable assistance from Justice Shapiro, articulated the terms of the agreement orally on the record. The agreement, referred to by the parties as the "Stipulation," was described by Anjum in his affidavit as follows:

12. I agreed that the accountant's valuation would be used and that Plaintiff's [Iffat's] interest in the business would be 50%. I also agreed to put the business up for sale immediately and give Plaintiff the first $26,250 of the net proceeds of a sale. The agreement further provided that if I did not sell the business by December 2002, I was required to pay the same amount, $26,250, to the Plaintiff. There was an additional $2,000 amount added to the amount I would owe Plaintiff based upon her interest in a car.

If the precise terms of the parties' Stipulation reached in court on November 21, 2001 were in dispute, or were relevant to the outcome of this motion, it would probably be necessary to examine closely the transcript of the record at the November

---

1. The entitlement to share in the debtor's estate has no value in this no asset case, but could be of great value in another case. The right to share in estate assets would not exist if the former spouse's claim were post-petition.

21 hearing, which is not a model of clarity or consistency. But no such dispute has been raised, and neither the terms of the Stipulation nor even its existence are germane to this decision.

Suffice it to say that what began as an apparent agreement to sell Anjum's dry cleaning business and divide the proceeds equally, with the default provision that if the business were not sold by December 1, 2002 Iffat could enter judgment for $26,250, was transformed into a somewhat different agreement, under which Anjum was obligated to pay Iffat $26,250 plus $2,000 for half the value of the car no matter what happened. Anjum could keep the business or sell it, immediately or at any other time, and whether he sold it for more or less than $52,500 or didn't sell it at all he was still obligated at the $28,250 figure.

Shortly after the November 21 hearing, in the second week of December 2001, Anjum consulted bankruptcy counsel. After attempting without success to sell the business, at the end of December Anjum "close[d] the doors of S & N," found another job and on January 17, 2002 filed "no asset" petitions for both S & N and himself. He listed the $28,250 owed to Iffat under the Stipulation as an unsecured, pre-petition claim.

On February 15, 2002, without moving to lift the automatic stay, Anjum's matrimonial attorney presented a Judgment of Divorce to the matrimonial court which was signed by Justice Shapiro and filed or docketed on March 18, 2002. The Judgment of Divorce adjudged and decreed that the marriage between Anjum and Iffat "is dissolved by reason of cruel and inhuman treatment of [Iffat] by [Anjum]" pursuant to Domestic Relations Law § 170(1) and provided further that "the provisions of the parties' oral Stipulation of Settlement dated November 21, 2001 ... are incorporated by reference as if fully set forth in this Judgment, and shall survive and not be merged in this judgment; and the parties hereby are directed to comply with every legally enforceable term and provision of such Stipulation. . . . "

Iffat timely commenced this adversary proceeding in which she seeks a judgment denying dischargeability as to Anjum's $28,250 equitable distribution obligation to her on two grounds. The first ground is that the Judgment of Divorce signed and filed on March 18, 2002 is a post-petition obligation. Failing this argument Iffat would also seek non-dischargeability under both subsections (2) and (15) of 11 U.S.C. § 523(a).

### *Discussion*

■ Iffat has moved for summary judgment on the first ground, arguing that Anjum's $28,250 debt to her is based on the Judgment of Divorce signed and docketed two months after the bankruptcy filing date and is therefore a post-petition obligation which cannot be discharged in Anjum's bankruptcy as a matter of law. Anjum's argument to the contrary is, in substance, that the Judgment of Divorce is predicated on and incorporates by reference the November 21, 2001 Stipulation, and for this reason Iffat's claim should be deemed to be a pre-petition obligation based on the Stipulation and therefore dischargeable in his January 17, 2002 bankruptcy.[2]

Both arguments focus on the date on which the debt arguably arose as the determinative factor. Anjum posits that the

**2.** Iffat's alternative grounds for non-dischargeability based upon Section 523(a)(2) and (15) involve issues of fact requiring a trial and are not at issue on this motion for summary judgment.

pre-petition Stipulation was an enforceable contract and, as in any other contract, his liability is based on the contract and not on the judgment which is merely the means to enforce the contractual obligation. He argues: "If the Stipulation represents an enforceable agreement, and it clearly does, then the equitable distribution rights of [Iffat] should be considered fixed and [Iffat] should have a claim arising pre-petition that is capable of being discharged in [Anjum's] Chapter 7 case." Iffat would respond that under New York law an agreement for equitable distribution does not give rise to either a transfer of property or binding rights/obligations for transfer of property unless and until embodied in a valid court order or judgment. Accordingly, she would argue that the date of the judgment is determinative.

The issue as thus framed need not be resolved, because neither party is correct in his/her analysis since both ignore the fundamental nature of equitable distribution as a division of property. The determinative question is whether the marital property which is the subject of equitable distribution was acquired by the parties before the date of the bankruptcy filing so as to be included in the debtor's estate, or after the bankruptcy filing under such circumstances that the property is not included in the debtor's estate.

The conclusion that the critical date is that of acquisition of the property, and not the date or even the existence of a prior agreement, becomes manifest if one considers two hypotheticals. First, let us assume a divorce judgment entered after a bankruptcy filing providing for equitable distribution of marital property acquired by the debtor *after* the filing and not included in the debtor's Chapter 7 estate

under 11 U.S.C. § 541.[3] The bankruptcy court and the Chapter 7 Trustee would have no jurisdiction over that property or its disposition. The former spouse would have a post-petition claim against the debtor under the judgment in respect of that post-petition-acquired marital property, but would not have any pre-petition claim against the debtor's estate based on the judgment respecting that property. The former spouse's claim against the debtor would not be discharged in the debtor's bankruptcy even if the divorce judgment were based upon and incorporated verbatim a pre-petition or even prenuptial agreement for equitable distribution between the parties, because the property in this hypothetical was acquired post-petition and was not part of the debtor's estate.

■ The result in the foregoing hypothetical follows from the general rule of law that property earned or otherwise acquired by a debtor after filing his Chapter 7 petition is not part of the debtor's estate to be administered by the Chapter 7 Trustee. Section 541(a)(1) states that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a)(6) specifically excludes from the estate "earnings from services performed by an individual debtor after the commencement of the case." Exceptions to the general rule are statutory, *e.g.*, Section 541(a)(5). L. King, 5 COLLIER ON BANKRUPTCY ¶ 541.03 at 541.9–10, expounding on the statute, states:

> As a general rule, the estate is normally comprised only of property interests belonging to the debtor at the time the petition is filed. In general, property of

---

**3.** The date of the post-petition divorce judgment, whether two months or two years after the bankruptcy filing, does not matter. What does matter in this hypothetical is that the property in question is acquired post-petition and is not part of the debtor's estate.

an individual not then owned but subsequently acquired by the debtor does not become property of the estate, but rather, becomes the debtor's personal property, clear of all claims that are ultimately discharged in the bankruptcy case. (footnotes omitted)

*See also*, 9 NORTON BANKR. L. & PRAC.2D FED. R. BANKR. P.2017; *In re Becker*, 136 B.R. 113, 115 (Bankr.D.N.J. 1992) ("Under Code section 541(a)(6), post-petition earnings from services performed by an individual debtor are not property of the estate in a chapter 7 or chapter 11 case"); *In re Scranton Knitting Mills*, 23 F.Supp. 803, 804–805 (M.D.Pa.1938) ("property to which the trustee is permitted to assert title is limited to property of the bankrupt owned at the time the petition in bankruptcy was filed. Property acquired after the filing of the petition ... is after-acquired property and does not vest in the trustee"); *Casey v. Hochman*, 963 F.2d 1347, 27 C.B.C.2d 76 (10th Cir. 1992) (individual's post-petition patent was debtor's property, and was not property of the estate); *In re Doemling*, 127 B.R. 954 (W.D.Pa.1991) (debtor's claim for injuries sustained in car accident post-petition was not property of the estate); *In re Haynes*, 679 F.2d 718 (7th Cir.1982), *cert. denied*, 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982) (post-petition retirement pay was not property of the estate).

Consider now a second hypothetical in which a post-petition divorce judgment provided for equitable distribution of marital property held by the debtor prior to filing his Chapter 7 petition, as in this case. In this second hypothetical the marital property becomes property of the debtor's estate in its entirety under Section 541 of the Bankruptcy Code to be administered by the Chapter 7 Trustee for the benefit of all creditors. The post-petition divorce judgment does not divest the Chapter 7 Trustee of the former spouse's putative equitable distribution share of the property. The divorce judgment results only in a pre-petition, unsecured monetary claim on the part of the former spouse entitled to share ratably in the debtor's estate with other unsecured claims. It matters not whether the divorce judgment was based upon an agreement between the spouses entered into before the bankruptcy filing, or upon an agreement made after the bankruptcy filing, or upon the decision of the matrimonial court without any agreement of the parties.

This analysis is consistent with the case law. The courts have uniformly held that when a final judgment of divorce has not been entered at the time of a bankruptcy filing, the non-debtor spouse's rights may be no greater than that of a general unsecured creditor. As stated by Chief Judge (then Judge) Bernstein in *In re Cole*, 202 B.R. 356, 360 (Bankr.S.D.N.Y. 1996): "The spouses' respective rights in marital property do not vest under New York law, however, until entry of a judgment dissolving the marriage. [Citations omitted] If bankruptcy intervenes before the state court enters the judgment, the trustee's status as hypothetical lien creditor cuts off the non-debtor spouse's inchoate rights in marital property [citations omitted], and leaves her with a general unsecured claim." Similarly, in *In re Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y. 1987) Judge Holland held: "Since no equitable distribution award had vested at the time of the filing of the petition, the debtor's property came into the estate free of the claims of the spouse." Concerning the effect of a post-petition divorce judgment, the court said: "To the extent that the state matrimonial court adjudicates an equitable distribution in favor of the non-debtor spouse, such award becomes a

claim within the context of 11 U.S.C. § 101(9). The non-debtor spouse's claim is an entitlement against the debtor's estate, and thus she becomes one of the general unsecured creditors of the estate." (*Id.*). To the same effect, *see: Goldberg v. Hilsen (In re Hilsen)*, 100 B.R. 708, 711 (Bankr.S.D.N.Y.1989), *rev'd on other grounds*, 119 B.R. 435 (S.D.N.Y.1990); *In re Lefrak*, 223 B.R. 431, 439 (Bankr. S.D.N.Y.1998) ("if bankruptcy intervenes prior to the divorce decree, the bankruptcy cuts off the inchoate right in 'marital property,' and leaves the nondebtor spouse with an unsecured claim"); *In re Vann*, 113 B.R. 704, 706 (Bankr.D.Colo.1990) ("Until a dissolution of marriage is commenced and the spouse takes some affirmative action to perfect her interest in the marital property, her rights are inchoate, and had a judgment lien creditor perfected its lien on the property prior to the spouse's perfection, her rights to the marital property would be subordinate to those of the judgment lien creditor"); *In re Polliard*, 152 B.R. 51, 55 (Bankr.W.D.Pa.1993) ("Since the Bankruptcy Code gives [the non-debtor spouse] no right of distribution superior to that of any other unsecured creditor, [the non-debtor spouse] will be entitled to a *pro rata* distribution along with other unsecured creditors"); *In re Price*, 154 B.R. 344, 346 (Bankr.N.D.Fla.

1993) (the equitable distribution determination only establishes the non-debtor's claim and such claim is "merely a general unsecured claim against [the] estate"); *Hoffman v. Hoffman*, 157 B.R. 580, 583 (E.D.N.C.1992), *aff'd*, 998 F.2d 1009, 1993 WL 280359 (4th Cir.1993) (the non-debtor's equitable distribution claim "is a general unsecured claim which is discharged unless excepted under the provisions of 11 U.S.C. § 523 or unless it is a valid secured claim"). *See also*, Judge Conrad's analysis in *In re Greenwald*, 134 B.R. 729 at 731 (Bankr.S.D.N.Y.1991) ("The few courts that have addressed the issue ... have consistently held that prior to [a divorce] judgment the rights of a nondebtor spouse to the debtor's property are no better than that of an unsecured creditor").

No case has been found in which a pre-petition agreement or stipulation between spouses with respect to equitable distribution of marital property, not incorporated in a judgment of divorce, has been held to exclude the marital property in question from the debtor's estate or otherwise deprive the Chapter 7 Trustee of jurisdiction to administer the property for the benefit of all creditors.[4]

In this case the marital property which was the subject of the equitable distribution provision in the Judgment of Divorce (the debtor's dry cleaning business and

---

4.  Of course, a pre-petition agreement or deed *transferring present ownership* of property (as distinguished from an agreement for equitable distribution contemplating future implementation either by a divorce judgment or a deed of transfer between the parties) by a spouse who subsequently files for bankruptcy to the other spouse would result in the property *actually transferred* being the separate property of the transferee spouse, and therefore not marital property. In such a case, the separate property of the transferee spouse could not be administered by the Chapter 7 Trustee, unless the transfer were voidable as a preference or fraudulent conveyance. Similarly, if a valid divorce judgment providing

for equitable distribution of marital property by means of an *in rem* transfer of the property (as distinguished from a money judgment in lieu of an *in rem* transfer) were entered prior to the debtor-spouse's filing for bankruptcy, the property in question (or the non-debtor spouse's share in it) would have been transferred to the non-debtor spouse pre-petition in accordance with the divorce judgment and therefore would not become part of the debtor's estate. *See, In re Greenwald*, 134 B.R. at 731 ("Because Ms. Greenwald's [marital property] rights in the [divorce judgment] vested prior to the bankruptcy proceeding, these items are not property of the estate [citations omitted]").

automobile) became property of Anjum's Chapter 7 estate upon the filing of his bankruptcy petition on January 17, 2002. In the usual case, the non-debtor spouse would apply to the bankruptcy court to lift the automatic stay to permit the parties to litigate their spousal rights and obligations (including equitable distribution) through to a judgment under state law in the matrimonial court. The stay normally would be lifted to permit a consensual or contested final judgment in the state court, including a money judgment (but not an *in rem* judgment) regarding equitable distribution. That judgment would then fix the non-debtor former spouse's claim in the debtor's bankruptcy under the case law above cited.[5]

The rule advocated here by Iffat (that the date of the equitable distribution judgment determines bankruptcy rights and obligations) would produce anomalous results on any state of facts by failing to match the claim against the property for which the claim is a substitute. For example, suppose the case of a debtor with valuable marital property and substantial other assets in his estate to be administered by the Chapter 7 trustee, but where the debtor has no material post-petition assets and limited post-petition financial prospects due to accident or infirmity. Under the rule urged by Iffat, a post-petition equitable distribution judgment would leave the non-debtor former spouse with a non-discharged, post-petition claim against the debtor with little prospect for any post-petition recovery, but with no pre-petition claim against the debtor's estate flush with the proceeds of the very marital property on which the equitable distribution judgment was based and in which she was supposed to share. Equally anomalous, if Iffat's equitable distribution

claim in this case were not recognized as a pre-petition claim discharged in Anjum's bankruptcy, then Iffat would have the right to satisfy that claim out of property Anjum may acquire post-petition and post-divorce, *i.e.*, property as to which Iffat never had and can no longer have any equitable distribution rights.

Unfortunately for Iffat, her claim happens to be of no value, but that is because the property giving rise to her claim had no value at the time of Anjum's bankruptcy filing and his bankruptcy estate had no assets. It does not change the fact that Iffat's equitable distribution claim represented her entitlement in respect of Anjum's pre-petition property which became property of his Chapter 7 estate. That claim is subject to discharge just like any other unsecured claim in a Chapter 7 case, unless grounds for non-dischargeability exist under Section 523(a).

### ORDER

Upon the foregoing, it is hereby

ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that counsel for both parties shall confer concerning a schedule for the prompt resolution of Iffat's claims of non-dischargeability under 11 U.S.C. § 523(a) and (15) and, within ten days from the date of this Decision and Order, plaintiff's counsel shall submit to the Court a Scheduling Order in the customary form providing for a deadline to complete discovery not more than ninety days from this date.

---

5. Here, however, no motion to lift the stay was filed by Iffat, and the debtor himself applied to the state court to enter the Judgment of Divorce fixing Iffat's equitable distribution claim, without opposition by Iffat.