# United States Court of Appeals
## For the First Circuit

Nos. 02-1962, 02-1963

LAURIE DAVIS a/k/a LAURIE DAVIS COX,

Appellant, Cross-Appellee,

v.

THOMAS COX,

Debtor-Appellee, Cross-Appellant.

CROSS-APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

Michael J. Pearce with whom Joshua R. Dow and Michael J. Pearce & Associates, LLC were on brief for appellant, cross-appellee.
George J. Marcus and Regan M. Hornney with whom Jennie L. Clegg and Marcus, Clegg & Mistretta, P.A. were on brief for cross-appellant, debtor-appellee.

January 15, 2004

**CAMPBELL**, **Senior Circuit Judge**.  These appeals challenge the bankruptcy court's resolution of an issue at the intersection of federal bankruptcy and Maine family law.

Sometime after his wife, appellant Laurie Davis, had sued him for divorce in the Maine state district court, Thomas Cox, the cross-appellant, filed for bankruptcy in the United States Bankruptcy Court for the District of Maine.  Subsequently the state court allowed the divorce and divided the couple's marital property.  As one part of the property disposition, the court awarded to Davis most of an Individual Retirement Account ("the Advest IRA") owned by Cox.  The court also directed that sums being held in escrow pursuant to its prior order be used to pay the couple's taxes and other debts.

Davis then sought permission from the bankruptcy court to execute the divorce court's division of the marital property.  The bankruptcy court, however, refused to let Davis recover against the Advest IRA.  It ruled that because the Advest IRA was in Cox's name when Cox petitioned for bankruptcy, it became the property of his bankruptcy estate, hence was not subject to the later judgment of the divorce court.  Instead, the divorce court's disposition relative to the IRA gave Davis merely a general unsecured claim for the relevant amount against the bankruptcy estate.  Regarding the sums held in escrow, the bankruptcy court ruled that these could be disbursed according to the divorce judgment.  The bankruptcy court

concluded that the state court's order placing the funds in escrow had acted as a lien, effective at the time of bankruptcy, against those funds.

Davis and Cox both appeal from these orders of the bankruptcy court. While we affirm the bankruptcy court's decision on the escrow property, we reverse the court's decision as to the Advest IRA and remand for further proceedings consistent with this opinion.

## I.      BACKGROUND

Laurie Davis and Thomas Cox were married on August 17, 1985. They have two minor children, ages 14 and 12. After the marriage, Davis was a homemaker and, for sometime, Cox was a successful commercial attorney. Since 1997, however, Cox has been classified as totally disabled with bipolar disorder.

On November 4, 1998, Davis filed for divorce in Maine's state district court. Upon commencement of the divorce action, the court was required by Maine law to issue, and did issue, a preliminary injunction enjoining either spouse from "transferring, encumbering, concealing, selling or otherwise disposing of property of either or both of the parties, except in the usual course of business or for the necessities of life." Me. Rev. Stat. Ann. tit. 19-A, § 903(1)(B)(1)(2000). The preliminary injunction was meant to keep intact, until ultimate division by the court, the divorcing couple's "marital property," a term Maine law describes as including

-3-

(with certain exceptions) all property acquired by either party subsequent to the marriage -- property that, upon divorce, is equitably divided by the court between the divorcing pair irrespective of in whose name it was held. Id. at § 953(3). Davis also filed a notice of lis pendens in the Cumberland County Registry of Deeds giving notice of the pending divorce relative to any real estate transactions. Id. at § 953(6). In addition, Davis sent a letter to Advest, the entity maintaining an individual retirement account held in Cox's name, advising it of the pending divorce and the preliminary injunction.[1] The Advest IRA, valued at approximately $65,000 at the commencement of the divorce proceeding,[2] was titled in Cox's name only.

Despite the preliminary injunction, Cox withdrew funds from the Advest IRA and disposed of other marital assets in violation of the restrictions contained in the injunction. When Davis brought Cox's conduct to the divorce court's attention, it entered an interim order on May 24, 1999, providing among other things that "neither party may draw down funds from the IRA's or from other liquid or semi-liquid assets, whether or not

---

[1]Cox also maintained another IRA at Fleet Bank valued at approximately $1,500. Davis sent a letter to Fleet Bank advising it of the divorce proceedings. The Fleet Bank IRA is not at issue in this appeal.

[2]By the time the divorce decree was issued, the IRA's value had risen to approximately $90,000.

-4-

characterized as for the necessities of life, without either prior written approval from the other party or order of the court." Cox ignored this order also and continued to make withdrawals from the IRA without Davis's prior approval or the court's order.

To avoid further dissipation of the marital assets, the Maine district court also ordered the parties' attorneys, Martin Ridge and Pamela Lawrason, to hold in escrow with their respective firms certain funds belonging to Cox and Davis. Those funds were not to be moved, used, or transferred absent a court order. Ms. Lawrason placed the funds in a separate interest bearing account ("Lawrason Account") and Mr. Ridge held the funds in his firm's trust account ("Ridge Account").

After several unsuccessful attempts at an agreed settlement, the parties requested the Maine district court to divide the marital property. Id. at § 953(4). Pursuant to Maine statute, the court is empowered to "set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors." Id. at § 953(1).

The divorce action was initially set for trial on February 28, 2000, but trial was postponed when Cox informed the court that he was filing a bankruptcy petition later that day. When the bankruptcy petition was not filed, the Maine district court rescheduled the trial for April 5, 2000. The trial was delayed

again, however, when, on that date, Cox filed with United States Bankruptcy Court for the District of Maine a petition for bankruptcy under Chapter 13 of the Bankruptcy Code. 11 U.S.C. § 301 (2000). A stay under 11 U.S.C. § 362 automatically went into effect at this time preventing the state court from proceeding with the trial. But on June 1, 2000, the bankruptcy court in response to Davis's motion, relieved her from the automatic stay to the extent necessary for her to continue with the divorce in state court. In its order, the bankruptcy court noted that the state court divorce action was virtually ready to be tried, that it involved state law issues as to which the state court has special and everyday expertise not requiring the expertise of the bankruptcy court, and that the estate and creditors were protected by Trustee Fessenden's appearance in the divorce action. The court further stated that relief from stay was not granted to implement any property settlement issues absent its further order.

Fessenden, the trustee for the bankruptcy estate, filed a memorandum in the divorce proceeding setting forth "the trustee's position on the bankruptcy issues in the pending divorce." The trustee's position was not unlike that now asserted by Davis, that the Maine district court would determine the ownership rights of the marital property pursuant to state law and the state court's disposition of the property would establish what is "property of the debtor" and define the bankruptcy estate. The trustee recognized,

however, that Maine law was unsettled "whether the eventual divorce judgment creates property rights or declares those rights which arose as of the filing of the divorce." (Emphasis in the original). As a result, the trustee urged the state court "to take this opportunity to address the fundamental issues of when divorcing parties' property rights arise as a matter of state law" and encouraged the court, if it needed guidance, to certify the question to the Supreme Judicial Court of Maine. The court held a four-day trial largely dealing with what disposition to make of marital assets and debt. After the trial, but before the court's judgment was issued, Cox, on October 30, 2000, converted his Chapter 13 petition to a Chapter 7 liquidation.

On November 21, 2000, the Maine district court entered its judgment. It granted the divorce, awarded parental rights to Davis, and made detailed orders concerning care of the children. Regarding disposition of the couple's property, the court inter alia found that the Advest IRA account, by then valued at $90,000, was a part of the couple's marital property. The court ordered that $10,500 of the Advest IRA be paid for guardian ad litem fees amassed during the divorce proceedings. It found it equitable to award $65,250 from the Advest IRA account to Davis, holding that Cox "was in contempt for violation of the preliminary injunction" and that $65,250 was a proper "sanction" for the contempt. The court stated that that sum "restores Plaintiff to the position she would have

enjoyed had Defendant not put these funds to his own use." In making that and the other property dispositions in the divorce judgment, the court recited that it had considered the factors set forth in title 19-A, § 953 of the Maine Revised Statutes and found the dispositions to be equitable.[3]

The court also ordered that the Lawrason Account, valued at approximately $36,000, be used to pay various tax debts. From the $36,000 balance, $10,850 was earmarked to pay the taxes on Cox's Advest IRA withdrawals, $10,210 was to pay for the couple's federal and state income tax debt from 1985 and 1986, and the balance was to be applied to a joint debt of the parties to Key Bank. The Ridge Account balance was approximately $8,400, $6,600 of which was to be paid to Davis for the support of their minor

---

[3]The court found that "[b]oth parties contributed to the acquisition of the marital property, Defendant through his successful law practice and Plaintiff through her employment outside the home as well as her contribution as a homemaker." Further noting that the court "has also given careful consideration to the parties' respective economic circumstances at this time," the court awarded the Peaks Island residence to Davis, and a substantial payment from his law firm to Cox. Cox was also given other real estate. The court noted Cox's contention that he needed the marital cash assets to pay bills and current expenses, including psychiatry not covered by insurance.

The court said that its property disposition "meets some of that need while providing funds for payment of the parties' joint tax liabilities and other joint debt."

The court declined Davis's request that Cox be ordered to pay her lump sum alimony, finding that because of Cox's disability and present economic circumstances, he lacked the ability to pay lump sum spousal support.

-8-

children, and the balance to be applied toward the satisfaction of their debt to Key Bank.

Neither party appealed from the divorce court's property division to a higher Maine court.

Although encouraged to do so by the trustee in bankruptcy, the Maine state district court said nothing about whether "the eventual divorce judgment creates property rights or declares those rights which arose as of filing of the divorce." See supra. Nor did it seek direction on these questions from the Supreme Judicial Court of Maine. Rather, noting the bankruptcy court's recognition of "the special and everyday expertise of this Court to address state law issues relative to the division of marital property," the divorce court simply undertook to fulfill its statutory role under § 953 and divide the marital property equitably between the divorcing spouses.

On March 26, 2001, Davis filed a motion in the federal bankruptcy court requesting that the court issue an order (1) granting her relief from the bankruptcy stay and (2) recognizing and giving full force and effect to the state court's divorce judgment. For purposes of the bankruptcy case, the parties stipulated that the Advest IRA was entirely exempt pursuant to title 14, § 4422 of the Maine Revised Statutes.[4] The trustee filed a response to Davis's

---

[4]Under 11 U.S.C. § 522, a debtor is allowed to declare certain property as exempt from the bankruptcy estate. Once an exemption becomes effective, the exempt property is generally not liable for

motion. There, he consented to the granting to Davis of relief from the automatic stay, and he requested that the federal bankruptcy court enter an order recognizing the state court divorce judgment with the condition that the bankruptcy court refuse to adopt the portion of the judgment which set aside $10,850 in the Lawrason Account for tax obligations and, instead, order that those funds be paid to him for the benefit of the bankruptcy estate.

Cox opposed Davis's motion seeking relief from the bankruptcy stay in order to execute the divorce property judgment. He argued that the Advest IRA had become the property of the bankruptcy estate, leaving Davis with only a general unsecured claim against the estate for the amount in the Advest IRA awarded her by the divorce court. He also asserted that the escrowed funds could not be used to pay down the mortgage owed to Key Bank.

The bankruptcy court determined that, pursuant to Maine law, the Advest IRA, to which Cox held legal title when he

---

any debt of the debtor that arose pre-petition. See id. at § 522(c). A debtor may choose to claim the exemptions listed in § 522(d) or those provided for under state law. Cox followed the latter route, claiming exemption for the Advest IRA under title 14, section 4422(13)(E) of Maine law. As applicable to this case, section 4422(13)(E) exempts from attachment an "individual retirement account . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Id. Section 4422(13) was amended by 2001 Me. Laws c. 306, §§ 1-5 effective September 21, 2001. It does not appear, however, that this amendment applies here. See Steelstone Industries, Inc. v. McCrum, 785 A.2d 1256, 1258, n.3 (2001) (concluding that amendment did not apply although it became effective during pendency of litigation). Even were the amendment applicable, its language would not alter the exempt status of the Advest IRA.

petitioned for bankruptcy, had by then become a part of the bankruptcy estate. The court concluded that Davis's right to any marital property held in Cox's name was contingent and did not vest until the divorce judgment was handed down, an event occurring after the bankruptcy petition had been filed. Davis v. Cox (In re Cox), 274 B.R. 13, 23 (Bankr. D. Me. 2002). By then, the Advest IRA, owned by Cox, was under the jurisdiction of the bankruptcy court. As a result, Davis acquired only a general, unsecured claim against Cox's bankruptcy estate for the $62,250 interest in the IRA awarded her by the Maine divorce court. Id. at 28. In reaching its conclusion, the bankruptcy court noted that Maine's divorce statute contained various specific remedies to protect the marital property, most relevantly attachment. The court reasoned:

> If a divorcing spouse's contingent rights to a distribution of marital property from assets held in the other's name can be protected by attachment, it follows they are unprotected without it (or its functional equivalent); . . . if the pendency of a divorce does not, of itself, disable a spouse from dealing with property held in his or her name, it simply cannot be that a Maine non-debtor spouse's unsecured, undeclared rights to a potential marital property distribution trump the estate's rights at bankruptcy.

Id. (citations omitted).

As to the funds held in escrow, the bankruptcy court held that the state court's pre-petition order placing the funds in escrow operated effectively as an attachment of those funds. Id. at 33. The state court order placed the funds in custodia legis,

-11-

thereby securing Davis's claim pending entry of the divorce judgment.  Id.  As a result, Davis's right to benefit from the distribution of the escrow funds in accordance with the divorce judgment was superior to the rights of the bankruptcy estate in the funds.  Id.

Ms. Davis and Cox both appealed from the bankruptcy court's judgment to the district court.  The district court affirmed the bankruptcy court, adopting its opinion in all respects.

## II.        DISCUSSION

### A.        Standard of Review

Under 28 U.S.C. § 158, appeals from the bankruptcy court go directly either to the district court (as here) or else to a federal bankruptcy appellate panel ("B.A.P.").  Nonetheless, when an appeal reaches us from one of these tribunals, this court focuses -- especially, as here, where the district court has affirmed on the basis of the bankruptcy court's findings and rationale -- on the decision of the bankruptcy court.  We examine that court's findings of fact for clear error and afford de novo review to its conclusions of law.  See Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002); Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997).

### B.        Advest IRA

A debtor's estate in bankruptcy comprises all property in which the debtor has "legal or equitable interests."  11 U.S.C. §

-12-

541(a). The bankruptcy court -- concluding that Cox, as the owner of the Advest IRA, would have held all legal and equitable interest in it until the time of the divorce court's judgment awarding it to Davis -- ruled that the Advest IRA became a part of the bankruptcy estate when Cox petitioned for bankruptcy.[5] At that time, the divorce action was ongoing in the state court but that tribunal had yet to issue its judgment determining inter alia how the marital property was to be divided as between the two spouses. Accordingly, the bankruptcy court believed that by the time of the state court's

---

[5]As indicated in note 4, supra, inclusion of the Advest IRA in the bankruptcy estate would not mean the IRA will go to Cox's creditors. By the parties' stipulation, the Advest IRA is exempt from Cox's creditors, being needed for his support and that of his dependents. See n.4, supra. As a result, Cox himself will retain the IRA notwithstanding his bankruptcy. The bankruptcy court commented that "as the record presently appears, it seems unlikely that [Mr. Cox's] attempt to exempt the IRA funds will fail." Cox, 274 B.R. at 31. As a result, the Maine divorce court's authority to make an equitable division as between the spouses, and in particular to award the lion's share of the IRA to Davis in reparation for Cox's contempt of the court's preliminary injunction, will be thwarted. Neither Cox's creditors nor Davis will have access to the IRA. According to the bankruptcy court, Davis is left with a general unsecured claim for $65,250 against her former husband's bankruptcy estate, without recourse against the IRA account. But see In re Perry, 131 B.R. 763, 767 (Bankr. D. Mass. 1991) (concluding that right to equitable distribution under Massachusetts divorce statute not a "claim" in bankruptcy). While Cox will thus retain the IRA, the bankruptcy court will still have under advisement the question whether Davis's $65,250 claim is nondischargeable in bankruptcy, see 11 U.S.C. § 523(a)(6) and (15), permitting her to pursue Cox even after his discharge in bankruptcy. Cox's abject financial position, however, suggests that nondischargeability may be difficult to obtain, id., and, even if obtained, will likely be a fruitless remedy. The same can be said as to Cox's claim against the bankruptcy estate.

judgment the Advest IRA was no longer a marital asset available for distribution by that court to Davis.

Ms. Davis disputes the above analysis. Her primary thesis is that, after commencement of a divorce proceeding, Maine law should be understood as providing to a non-owner spouse an inchoate equitable interest in all marital assets separately owned by the other spouse. Property in which the debtor-spouse holds legal title does not, she notes, become property of the bankruptcy estate "to the extent of any equitable interest in such property the debtor does not hold." 11 U.S.C. § 541(d). Davis's inchoate equity interest in the Advest IRA was, she argues, excluded from Cox's bankruptcy estate by operation of § 541(d). When the divorce court later entered its judgment granting the divorce and awarding a portion of the Advest IRA to Davis, her inchoate equity in the IRA became choate to the extent of the judgment, and the award took effect, so she contends, free and clear of Cox's bankruptcy. As an alternative to this theory, Davis argues that Cox should be deemed to have held the Advest IRA upon a constructive trust for her benefit prior to the bankruptcy, resulting in its provisional exclusion from the bankruptcy estate until the divorce court's final disposition of the marital property clarified what assets went to Davis.

-14-

A number of courts in divorce situations outside Maine have adopted one or the other of the above theories.[6] In respect to the first, some courts infer from divorce laws not unlike Maine's that, once a divorce proceeding has begun, the non-debtor spouse acquires an inchoate equitable interest in all assets held in the other spouse's name that form a part of the divisible marital estate. See, e.g., White v. Bell (In re White), 212 B.R. 979, 982 (B.A.P. 10th Cir. 1997) (relying on Wyoming law to infer a species of "co-ownership" in all marital property upon filing of divorce petition); Roberge v. Roberge, 188 B.R. 366, 368-69 (E.D. Va. 1995), aff'd, Roberge v. Buis, 95 F.3d 42 (4th Cir.) (unpublished) (concluding under Florida law equitable rights vest upon the filing of divorce petition).

Other courts have premised a spouse's equitable rights in marital property owned by the debtor spouse upon a theory of constructive lien or constructive trust. See, e.g., Walston v. Walston, 190 B.R. 66, 69-70 (E.D.N.C. 1995) (concluding "the fact of a pending action for the inevitable distribution of specified property should operate to create a constructive lien in favor of the non-debtor spouse"); In re Perry, 131 B.R. 763, 767-68 (Bankr.

_____

[6]While there is significant support along these lines for non-debtor spouses in situations like the present, such support is by no means universal. Many other courts have embraced a rationale similar to that of the bankruptcy court here. See, e.g., Anjum v. Anjum, 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003); Lawrence v. Lawrence, 237 B.R. 61, 79 (Bankr. D. N.J. 1999); In re Cole, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996).

D. Mass. 1991) (relying on constructive trust theory to exclude non-debtor spouse's undeclared interest in marital property from bankruptcy estate).

On the facts of this case, we conclude that, under Maine law, Davis did indeed possess at bankruptcy an equitable interest in the Advest IRA such as prevented it, by virtue of 11 U.S.C. § 541(d), from becoming at that moment a part of Cox's bankruptcy estate. In reaching this result, we proceed narrowly on the remedial theory of constructive trust. We need not decide, and indeed think it inappropriate for a federal court to decide without first seeking more specific guidance from Maine's Supreme Judicial Court, whether Maine law, broadly applied, gives to non-owner spouses in ordinary circumstances after commencement of a divorce case, but before entry of judgment, an inchoate equitable interest in marital assets owned by the owner spouse. Such a general holding would have profound implications for Maine's law of creditors' rights in a variety of factual situations different from the present. As the issue is one of first impression in Maine, Maine's highest court rather than a federal court should be the first to plough such new territory.

The special equities favoring Davis on the facts of this particular case are, however, compelling. The state divorce court's award of most of the Advest IRA to Davis was granted, following a four-day trial, expressly in order to restore her to the position

-16-

she would have been in had not Cox misapplied marital assets to his own use in disobedience of the court's preliminary injunction and the interim order -- a pattern of misconduct that commenced well before Cox filed for bankruptcy. Because of Cox's disability and support needs, attachment of the IRA does not appear to have been an option open to Davis prior to bankruptcy. 14 M.R.S. § 4422(13)(E). See note 4, supra. The Maine court ultimately found Cox in contempt and, as a remedy, ordered payment to Davis of $65,250 from the Advest IRA, a remedy that will have meaning if Davis had an equitable interest in the Advest IRA prior to Cox's filing of his petition for bankruptcy but not otherwise. On the present facts, especially given Cox's contemptuous behavior before the filing for bankruptcy, we think a Maine court, applying Maine law, would in these circumstances rule that, by the time he filed for bankruptcy, Cox held the Advest IRA upon a constructive trust for his spouse, Davis, subject to the divorce court's ultimate determination of its ownership.

We begin our analysis by looking at Maine law as presently reflected in its divorce statute, and in the opinions of its Supreme Judicial Court. Butner v. United States, 440 U.S. 48, 54 (1979) (stating that what constitutes a legal or equitable interest for bankruptcy purposes turns on state law).

1.          **Maine's Statutory Law**

Maine's divorce law embodies major revisions adopted in 1972 by the Maine legislature.  See Zillert v. Zillert, 395 A.2d 1152, 1154-55 (Me. 1978).  The primary goal of these modifications was to ensure that, upon divorce, each spouse  receives an equitable share of the so-called "marital property."  See Fournier v. Fournier, 376 A.2d 100, 102 (Me. 1977).  Under Maine's statute, the divorce court is directed and authorized to divide the marital property as equity demands, taking into account the various factors set forth in Me. Rev. Stat. Ann. tit. 19-A, § 953(1).[7]  The legislature broadly defined "marital property" to encompass "all property acquired by either spouse subsequent to the marriage . . . regardless of whether title is held individually or by the spouse in some form of co-ownership."  Id. at § 953(3).  According to Maine's Supreme Judicial Court, this statutory definition reflects the central premise on which the statute was founded:  that marriage is a partnership in which two individuals combine their efforts into

---

[7]The Maine statute directs the court to look at three factors: (1) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; (2) the value of the property set apart to each spouse; and (3) the economic circumstances of each spouse at the time the division of property is to become effective.  Id. at § 953(1). When dividing marital property, courts have also taken into account a spouse's "economic misconduct" during the pendency of divorce proceedings, specifically the unauthorized diminution of marital property.  See Williams v. Williams, 706 A.2d 1038, 1040 (Me. 1998).

a single enterprise. See Long v. Long, 697 A.2d 1317, 1320 (Me. 1997). With this premise in mind, courts, when determining a "just" division of marital property are to take into account not only a spouse's monetary contributions but the non-monetary ones made during a marriage such as being the primary caretaker for the children. See Me. Rev. Stat. Ann. tit. 19-A, § 953(1); Carter v. Carter, 419 A.2d 1018, 1020-21 (Me. 1980).

To help ensure the preservation of the marital assets for equitable distribution, the Maine legislature provided that when a petition for divorce is filed, a standard preliminary injunction will issue, preventing either spouse, during the course of the divorce proceeding, from "transferring, encumbering, selling, or otherwise disposing of the property of either or both of the parties, except in the usual course of business or for the necessities of life." Me. Rev. Stat. Ann. tit. 19-A, § 903(1)(B)(1). The divorce statute also authorizes the "[a]ttachment of real or personal property or trustee process." Id. at § 903(5); Liberty v. Liberty, 769 A.2d 845, 846 (Me. 2001). The statutory direction for issuance of a preliminary injunction during pendency of the divorce proceeding, as well as the provisions for attachment and other specified remedies, reflect a clear legislative intent to prevent divorcing spouses from disposing unfairly pendente lite of marital assets that, upon divorce, the court must inevitably determine belong in equity to one or the other of them. Such

-19-

assets, as already noted, include ones that are owned in the individual name of one or the other spouse. That such statutory restrictions come into existence upon the institution of a divorce proceeding indicates the Maine legislature's expectation that the filing of a divorce case -- and not just the entry of judgment at the end of the case -- will significantly affect each spouse's property rights.

The bankruptcy court nevertheless took the view that by providing only for a preliminary injunction, attachment and certain other specific remedies, the Maine legislature indicated a wish to deny to a non-owner spouse any other unstated remedies, including equitable ones. We do not think this necessarily follows. Enactment of these particular remedies also betrayed a more general legislative intent, once divorce proceedings had begun, to shelter and sequester marital assets for the benefit of both spouses until the court could effect their just division. The Maine statute goes on to state that "[t]he remedies provided in this subsection for enforcement of a preliminary injunction are in addition to any other civil or criminal remedies available, including civil contempt of court." Me. Rev. Stat. Ann. tit. 19-A, § 903(3)(C). The statutory language and scheme are thus compatible with -- indeed, strongly suggest -- legislative approval of supplemental measures that a court might find reasonable and necessary to achieve the goal of safeguarding the marital estate until it can be properly divided.

The Supreme Judicial Court of Maine has expressly stated that "the divorce court's power to divide marital property includes powers necessary to render effective the power to divide." Baker v. Baker, 444 A.2d 982, 986 (Me. 1982).

The matter of supplementary equitable remedies takes on special significance here where the property at issue (i.e. the Advest IRA) was apparently exempted by Maine law from attachment, although it also formed a part of the marital property that the Maine court ultimately could and did award to Davis. Under Maine law, an IRA is exempt from attachment "to the extent reasonably necessary" for the support of a debtor and his dependents. See Me. Rev. Stat. Ann. tit. 14, § 4422(13)(E). Steelstone Indus., Inc., 785 A.2d at 1258-1259. Relying on the same statute, the parties have stipulated to the Advest IRA's exempt status in bankruptcy, and the bankruptcy court relevantly noted that the "'reasonably necessary' needs of Cox and his family would seem to be substantial." Cox, 274 B.R. at 31 n.29. Thus, any attempt by Davis to have protected her interest in the Advest IRA by attaching it would likely have been futile. Davis did attempt diligently if unsuccessfully in other ways to protect her interest, by obtaining a court order tightening the injunction after Cox violated the previously worded one, and by sending a letter to Advest, the entity maintaining the IRA, advising it of the pending divorce and the terms of the injunction.

Ultimately, the divorce court, after having the benefit of a four-day trial during which it reviewed exhaustively the circumstances and relationship of the two divorcing spouses, awarded to Davis a substantial interest in the Advest IRA as compensation for Cox's contempt of the court's preliminary injunction. This award was part of the court's comprehensive division of the total marital property as between the divorcing spouses. In the course of these proceedings the court was fully informed of Cox's disability and support needs as well as Davis's conflicting needs and claims, and the needs of their children. No appeal from the divorce court's property division was taken either by Cox or Davis. The question now at hand, therefore, is whether that division will be given effect or whether, in some part, it will be skewed to Davis's detriment, allowing Cox to regain all of the Advest IRA notwithstanding his violation of the preliminary injunction and contrary to the considered judgment of the court most familiar with the equities as between both parties.

To be sure, it can be argued that Cox's ability, by virtue of bankruptcy, to regain the Advest IRA merely reflects the application under federal bankruptcy law of an exemption for the debtor's support needs derived from a Maine state statute. Me. Rev. Stat. Ann. tit. 14 § 4422(13)(E); see note 4, <u>supra</u>. But the disposition of marital property made by the state divorce judge took into comprehensive account the equities as between the divorcing

parties, including Cox's needs insofar as they could properly be accommodated. That disposition, rather than the narrower support provision of § 4422(13)(E), reflected Maine's final application of its own law.

## 2. **Maine Case Law**

Cox nonetheless argues that Maine case law supports his position that, until the actual division of the marital property is decided by a divorce court's judgment, each spouse wholly owns his or her separately owned property even if forming a part of the marital estate. Cox bases this argument on Maine cases interpreting spousal property rights where, however, divorce was neither contemplated nor in process. We do not find those cases dispositive here.

As already pointed out, the legislature's provision for a preliminary injunction and other protective remedies once a divorce case is filed indicate a legislative intent to constrain the free disposition of marital property during the period after divorce proceedings begin. See Plourde v. Plourde, 678 A.2d 1032, 1035-36 (Me. 1996) (commenting that the mandatory preliminary injunction is designed to maintain the status quo and prevent the diminution of marital property prior to final judgment). Thus we reject Cox's suggestion that the freedom of an owner spouse to deal with separately-owned marital assets after commencement of divorce proceedings is no more limited than it ever was before. The Maine

-23-

case law cited by Cox deals with situations not involving divorce. Those cases merely hold that where a divorce is _not_ involved, marital property that is individually held may be disposed of at will by either spouse.  See Long, 697 A.2d at 1321 (noting that "[t]he 'marital property' designation grants no present rights [of the non-owner spouse] in the property during the marriage").  In other words, a non-owner spouse does not, _absent a divorce situation_, acquire by virtue of the marital relationship alone an interest, beneficial or otherwise, in the owner-spouse's property. Id.

The Supreme Judicial Court of Maine has never decided whether, once a divorce proceeding has begun, a non-owner spouse holds an equity interest in marital property held by an owner spouse.  As already indicated, however, the creation of specific protective remedies during the divorce proceeding reflects a legislative intent that marital assets be sheltered and preserved during that period.  Moreover, the aims of Maine's modernized divorce law are at odds with the view that, during divorce proceedings, a non-owner spouse is without some interest in the marital property that is soon to be divided at the end of the proceeding.  The Long court noted that previously at common law "marriage did not create rights to property held during the marriage, and a spouse could acquire an interest in the property of the other only by dower or courtesy right on the death of the

other."  697 A.2d at 1320.  To avoid the inequities at common law, the court pointed out that the Maine legislature adopted the "shared enterprise or partnership theory" of marriage.  Id.  Under this theory, the Court wrote, the statute provides "a mechanism for identifying marital property, creates for spouses a right to an equitable share of marital property, and empowers the court to equitably divide the property." Id. at 1321.  The court went on to discuss the status of property held in the name of one spouse.

> Thus property held in the name of one spouse may still be treated as "marital property." The "marital property" designation grants no present rights in the property during the marriage but, on divorce, the court must divide all marital property "as the court deems just" granting an equitable share to each spouse.

Id. (emphasis supplied); see also Szelenyi v. Miller, 564 A.2d 768, 770 (Me. 1989) (stating that the "marital property" designation does not affect property rights "in which a divorce or legal separation is neither pending nor contemplated") (emphasis supplied); Fournier, 376 A.2d at 102 ("The Act does not prevent married persons from owning property separately during marriage and disposing of it in any fashion either of them may choose, assuming neither a separation nor a divorce intervenes.") (emphasis supplied) (citing In re Questions Submitted by the United States District Court in Imel v. United States, 517 P.2d 1331, 1335 (Colo. 1974)).[8]

---

[8]While one possible reading of the Long court's "on divorce" phraseology could be that a non-owner spouse's interest only arises

-25-

A spouse, therefore, holds property subject to the non-owner spouse's "right to equitable distribution" upon divorce. Salenius v. Salenius, 654 A.2d 426, 429 (Me. 1995). It logically follows that after a divorce proceeding has commenced the Maine courts will afford such reasonable protection as may be required to ensure that a non-owner spouse's rights to equitable distribution are not thwarted by the owner spouse prior to the time the court can issue its decree dividing the property. According to the Supreme Judicial Court of Maine, the Maine courts "are vested with the general power as well as duty to deal with all marital property." Bryant v. Bryant, 411 A.2d 391, 393 (Me. 1980).

## 3. Equitable Relief

In the present case, none of the legal remedies specifically provided under Maine law sufficed to have prevented Davis's interest in the IRA from being included in her husband's bankruptcy estate. While the mandatory preliminary injunction forbad Cox's improper inter-meddling with the Advest IRA, it did not expressly establish a lien in Davis's favor; and it does not appear that had she attempted in advance of bankruptcy to attach the Advest IRA that she could have done so given the statutory exemption now claimed by Cox. See supra. In the bankruptcy court's view, this

upon the issuance of the final judgment granting divorce and dividing the property, the other cited decisions of the Maine Supreme Judicial Court use broader language leaving open precisely when and how the partnership rights are to be implemented once divorce proceedings are underway.

-26-

absence of any express legal remedy confirms a legislative desire to leave Davis without recourse.  As a result, her former husband will, insofar as appears, take the Advest IRA in spite of the fact that the divorce court has determined, after an extensive trial and full consideration of the equities, that, in equity, this marital asset belongs, in large part, to her.  Ironically, the husband's creditors will receive no benefit from this outcome; indeed, they will be worse off in that their claims will now be diluted by Davis's.  Only Cox personally will benefit, winning in bankruptcy what he lost in the divorce court.

We do not believe that either Maine law or federal bankruptcy law, which relies here upon Maine property law, warrants such a result.  The Maine legislature has provided that all marital assets be equitably divided by the divorce court's judgment, and we may assume that the divorce court here acted properly and within its authority in awarding the lion's share of the Advest IRA to Davis, no appeal from its judgment having been taken.  Moreover, the award was rendered specifically to remedy Cox's pre-bankruptcy contempt of the court's statutory injunction.  For that award to be essentially nullified, leaving the Advest IRA in the hands of Davis's ex-spouse, is to reject the obvious intentions of the Maine

legislature that the divorce court's equitable division here be dispositive as between the divorcing spouses.[9]

To be sure, the issue is ultimately one of federal bankruptcy law, but federal bankruptcy law makes the question of what property to include in Cox's bankruptcy estate dependent upon state law, and we think a Maine court would rule, on these facts, that, prior to bankruptcy, Cox held the Advest IRA upon a constructive trust for Davis. See infra. This is not a case where it can be said that Davis has failed to avail herself in a timely fashion of an available legal attachment remedy that could have sheltered her interest in the marital property from inclusion in Cox's bankruptcy estate. Nor is it a case involving creditor interests other than such as may be said to exist between the divorcing couple themselves, Davis and Cox. The question under the federal bankruptcy law is whether Davis held, under state law, a viable equitable interest of her own in the Advest IRA at the time of the bankruptcy petition. See Butner, 440 U.S. at 54. On all these facts, we believe she did.

_____

[9]As previously noted, while Maine's own attachment statute and ultimately the bankruptcy statute exempt property reasonably necessary for the owner's support, the Maine divorce court's property division, made after a lengthy trial, reflects the state's most complete and sensitive reading of the equities as between Cox and Davis, including Cox's appropriate needs. That decision, rather than the narrower rule set out in Me. Rev. Stat. Ann. Tit. 14, § 4422(13)(E) is the proper guide to Maine law here, and the one to which Maine's courts would give effect in the present circumstances.

We think a Maine court would hold, in these facts and circumstances, that at the time of bankruptcy, Cox held the Advest IRA upon a constructive trust for Davis, with the precise scope of her beneficial interest to be ultimately determined by the divorce court. We believe that the existence of this equitable interest sufficed under section 541(d) of the Bankruptcy Code to remove the Advest IRA from Cox's bankruptcy estate, subject to final disposition by the Maine divorce court. It is commonplace that where legal remedies are inadequate, they may be supplemented by appropriate equitable ones. See Stanton v. Trustees of St. Joseph College, 233 A.2d 718, 723-24 (Me. 1967). We find the legal remedies inadequate here.

Our dissenting colleague speculates that Davis could conceivably achieve some measure of future relief if, for example, the bankruptcy court were to be prevailed upon to treat her claim for $65,250 as nondischargeable. But even so the likelihood of meaningful relief, having in mind the costs of further litigation in the bankruptcy arena and Cox's intransigence, seems slight at best. We are far less optimistic than our dissenting colleague that relitigation of the divorce equities in a federal bankruptcy tribunal would provide succor to Davis.

Constructive and resulting trusts are traditional constructs utilized by courts, including those in Maine, to avoid unjust enrichment and other forms of injustice that would result

from allowing the legal owner to benefit from the property. <u>See</u> <u>Thomas</u> v. <u>Fales</u>, 577 A.2d 1181, 1183 (Me. 1990); <u>see also</u> <u>In re Questions Submitted by the United States District Court in Imel v. United States</u>, 517 P.2d 1331, 1335 (Colo. 1974) ("Upon and after filing the [divorce] action the rights of the wife are analogous to those of a wife who can establish a resulting trust . . . .") <u>cited in</u> <u>Fournier</u>, 376 A.2d at 102. For marital property like the Advest IRA, to pass through Cox's bankruptcy estate so as ultimately to frustrate the decree of the Maine divorce court and benefit Cox exclusively at the expense of his former spouse and in derogation of the divorce decree, is the very sort of inequity such devices have been utilized to prevent. Here, following Cox's violation of the statutory injunction, the Maine court issued on May 24, 2999, prior to bankruptcy, a further express order forbidding him to draw down the IRA's and other liquid assets -- an order he also proceeded to violate.

Since our decision hinges, in particular, upon the existence of the pre-bankruptcy orders, Cox's disobedience then, and the fact the $65,250 IRA award was to redress the loss to Davis caused by that misconduct, our decision can be said to rest upon the remedial theory of constructive trust. <u>See</u> Restatement of Restitution § 160 et seq. (1937). But the concept of resulting trust is analogous also.

-30-

The creation of a resulting trust protects those who contribute toward the acquisition of property against the prospect of losing it to a second party who took title in the transaction. See Restatement (Second) of Trusts § 440 (1959). The party for whom the resulting trust is created need not have made a monetary contribution to acquire the property -- any contribution of services or property may entitle her to a beneficial interest in the property. See id. at § 455. Thus, it is appropriate to find a trust analogous to a resulting trust in favor of a spouse who may subsequently be found by the divorce court to have contributed money, property, or services during the course of a marriage and, as a consequence, to be equitably entitled to receive all or part of the property upon division. Baker, 444 A.2d at 985; see generally Restatement (Second) of Trusts §§ 442-43 & 455 (1959). The Supreme Judicial Court of Maine has been willing, albeit on different facts, to impose a resulting trust in the context of the distribution of non-marital property. See Grishman v. Grishman, 407 A.2d 9, 12 n.7 (Me. 1979); see generally Restatement (Second) of Trusts § 440 et seq. (1959). That it would be willing to protect a spouse's interest in marital property in these circumstances seems only reasonable. In any event, Cox's contemptuous misuse of marital assets prior to bankruptcy, including those from the Advest IRA itself, in defiance of the court's injunction, warrants the finding

of a constructive trust in order to protect Davis's interest in the property.

As previously said, we need not go so far as to determine, as Davis encourages us to do, that the Supreme Judicial Court of Maine would broadly infer from the design and structure of the Maine divorce statute that, upon commencement of every divorce action, each spouse automatically acquires an equitable interest in the other spouse's separately held assets of whatever kind -- an interest sufficient to block transfer to a subsequent bankruptcy trustee of property the latter individually owns.[10] Such an inference would arguably be consistent with the partnership theory of marriage adopted by the Maine legislature, since it would result in treating marital property like "partnership property" in a business partnership or "community property" in a community property state. See Carter, 419 A.2d at 1021. Courts have held that partnership property itself does not become property of an individual partner's bankruptcy estate. See McGahren v. Gray (In

---

[10]See, e.g., White v. Bell (In re White), 212 B.R. 979, 983 (B.A.P. 10th Cir. 1997) ("Thus, where the divorce is pending when the bankruptcy petition is filed, the divorcing spouses' respective property interest are vested but subject to subsequent definition."); In re Greer, 242 B.R. 389, 396 (Bankr. N.D. Ohio 1999) (finding that "it was the intention under Ohio law to confer upon a spouse an interest in any property that is or would qualify as 'marital property' regardless of whether such property was separately titled."); Roberge, 188 B.R. at 369 ("Once a [divorce action is filed] the right to equitable distribution vests [and] the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution.").

re Weiss), 111 F.3d 1159, 1166 (4th Cir.), cert. denied, 522 U.S. 950 (1997). While the debtor's interest in the partnership is included in the estate, the assets held by the partnership itself are not. Id. If these principles were to be applied to the current case, only Cox's undeclared interest in marital property would become part of the bankruptcy estate. See Tidwell v. Cent. Savs. Bank (In re Hunt), 154 B.R. 1016, 1023 (Bankr. M.D. Ga. 1993) (noting that trustee's only interest in partnership property was the right to demand partner's share after an accounting and payment of partnership liabilities).

The particular circumstances of this case, however, render it unnecessary for us to make such an extensive pronouncement regarding the scope of Maine law.[11] All we need hold here is that where one spouse held title to marital property that, as a practical matter, was exempt from attachment, and where the specific facts and equities were such as have been described, the non-owner spouse may claim to have held an undeclared beneficial interest in the property awarded by the divorce court, her interest having been held for her prior to bankruptcy upon a constructive trust by the owner-spouse

---

[11]Our reluctance is increased by the fact that any such broad pronouncement as to Maine law could have unforseen effects on Maine creditors' rights law in factual circumstances quite different from the present. Any such interpretation of Maine law, even provisionally, should be left to the Supreme Judicial Court of Maine upon certification or otherwise rather than attempted by a federal court.

until such time as the divorce decree became final and the marital assets were divided. This beneficial interest, the scope of which was ultimately determined by the state court when dividing the marital property, was excluded from the bankruptcy estate by operation of 11 U.S.C. § 541(d). Compare In re Perry, 131 B.R. at 768 (excluding from the bankruptcy estate under Massachusetts law and § 541(d) a spouse's beneficial interest in marital property found to be held in a "constructive trust" by the debtor-spouse). Our conclusion is consistent with the Maine legislature's adoption of the partnership theory of marriage and the powers it has granted to the state courts, as well as the powers those courts inherently retain, to protect and divide the marital property. See Me. Rev. Stat. Ann. tit. 19-A, § 903; id. at § 953.

Under this analysis, Davis obtained an undeclared beneficial interest in the Advest IRA at the time the divorce petition was filed. Although the IRA was titled in Cox's name, once the divorce action commenced, he held the IRA in trust pending the state court's order dividing the marital property. Davis's beneficial interest to the extent ultimately awarded to her did not become a part of the bankruptcy estate.

We add that, for purposes of this case, we need not worry about whether the trustee's strong arm powers under 11 U.S.C. § 544

cut off Davis's beneficial interest in the Advest IRA.[12]  In this

case, the trustee did not attempt to avoid Davis's interest in the

Advest IRA and, in fact, wholly supported the award.  Thus, this

case can be distinguished from those cases in which the courts have

concluded that the filing of a bankruptcy petition cut off the

unrecorded equitable rights of a non-debtor spouse.[13]  In this case,

once the divorce judgment dividing the property became final, Davis

was free to execute the judgment and claim her beneficial interest

in the Advest IRA.

## C.        Escrow Accounts

Mr. Cox appeals from the bankruptcy court's ruling that

the funds held in escrow were not property of the estate and could

be disbursed according to the divorce judgment.  The divorce court

---

[12]In so stating we do not mean to indicate our view on this separate issue one way or the other.

[13]See, e.g., Perlow v. Perlow, 128 B.R. 412, 415 (E.D.N.C. 1991) (finding § 544 cut-off spouse's right because under North Carolina law a judgment creditor's rights are superior to a spouses because the filing of divorce does not create a lien on specific marital property in favor of the spouse); Lawrence v. Lawrence, 237 B.R. 61, 78-79 (Bankr. D.N.J. 1999) (finding § 544 cut-off spouse's right because under New Jersey law a judgment creditor's rights are superior to a spouse's if the lien was obtained prior to divorce judgment); Anderson v. Briglevich (In re Anderson), 147 B.R. 1015, 1022 (Bankr. N.D. Ga. 1992) (concluding that non-debtor's unrecorded equitable interest in marital property cut-off by trustee's strong arm powers); In re Vann, 113 B.R. 704, 706 (Bankr. D. Colo. 1990) (stating that until a spouse takes affirmative action to perfect her interest in marital property the trustee's rights are superior under § 544).

ordered that funds held in the Lawrason Account and the Ridge Account be used to pay certain tax debts and a joint mortgage serviced by Key Bank.[14] In the proceedings below, the trustee opposed implementation of the divorce judgment to the extent that it ordered funds from the Lawrason Account to pay pre-petition creditors. The trustee argued that the Lawrason Account should be turned over to the estate and used to pay the creditors according to the distribution scheme set forth in the Bankruptcy Code. Cox also opposed the implementation of the divorce judgment as it related to the escrow accounts. Unlike the trustee, however, Cox did not contend that the escrow account could not be used to pay the tax debts. He argued only that Key Bank, as a general, unsecured creditor, should not be paid outside of priorities set forth in the Bankruptcy Code.

The bankruptcy court concluded that the funds held in escrow were not property of the estate and could be distributed in accordance with the divorce judgment.[15] The bankruptcy court

_____

[14]Of the $36,000 in the Lawrason Account, $10,850 was set aside to pay taxes on the premature withdrawals from the Advest IRA, $10,210 was earmarked to pay state and federal income taxes from 1985 and 1986, and the balance was to be applied to the parties' joint debt to Key Bank. Of the $8,400 in the Ridge Account, $6,600 represented retroactive SSDI payments paid to Davis on behalf of the children and was awarded to Davis for that purpose, the balance of the escrow account, $1,800, was also to be applied toward the Key Bank debt.

[15]Davis argues on appeal that Cox does not have standing to appeal the bankruptcy court's judgment regarding the escrow

reasoned that as of the petition date, Cox's interest in the funds was a "contingent one, depending on the divorce court's determination regarding their disposition." According to the bankruptcy court, the state court order for escrow of the funds held by Lawrason and Ridge placed the funds in custodia legis and "operated, effectively, as an attachment of those funds," thereby securing Davis's claim pending entry of the divorce decree.

To determine what interest, if any, Cox had in the funds held by order of the court and thus what interest passed to the bankruptcy estate, we must look to Maine law. The bankruptcy court relied on Maine law regarding court-appointed custodians to support

accounts. The bankruptcy court addressed whether Cox had standing to oppose the implementation of the divorce decree as it pertained to the escrow accounts and stated it was "unconvinced that Cox ha[d] independent standing." It did not make a final determination on this issue, however, because the trustee had standing to oppose the divorce judgment's disposition of the escrow accounts. Under the Bankruptcy Code, standing to appeal from a final bankruptcy order is accorded only to a "person aggrieved" by the decision. Spenlinhauer v. O'Donnell, 261 F.3d 113, 117-18 (1st Cir. 2001). A "person aggrieved" is one whose pecuniary interests are directly and adversely affected by the order. Id. at 118. Cox argues that he has a direct pecuniary interest in the outcome of the appeal because the majority of the funds held in escrow are exempt assets and thus would pass out of the bankruptcy estate and into his hands. This theory is viable only if the allegedly exempt assets were Cox's property at the time the petition was filed and thus became property of the estate. The standing issue and the substantive issue of what, if any, interest Cox had in the escrowed funds at the commencement of the bankruptcy case are closely intertwined. If Cox does not have an interest in the escrowed funds then it is unlikely that he has standing to challenge the order disposing of those funds. Thus, whether we address the merits or the standing issue, we must examine what interest Cox had in the escrowed funds at the commencement of his bankruptcy.

its decision. Under Maine law, when a court in equity appoints a receiver, the title to the property vests in the receiver and is held in custodia legis until it is disposed of by the receiver in compliance with an order of that court. See Hazzard v. Westview Golf Club, Inc., 217 A.2d 217, 223 (Me. 1966); Cobb v. Camden Savs. Bank, 76 A. 667 (Me. 1909); Littlefield v. Maine Cent. R.R. Co., 71 A. 657, 660 (Me. 1908). This includes money collected by an officer of the court. See Hardy v. Tilton, 68 Me. 195 (1878). Title vests in the receiver upon his or her appointment. Cobb, 76 A. 667 (stating "the decree of appointment ipso facto vests the title to the [property] in the receiver").

The court here appointed the parties' attorneys to hold certain funds in escrow pending the division of the marital assets. The attorneys were appointed to safeguard the property to prevent Cox from continuing to dissipate the funds in violation of a court order. When the state court directed the attorneys to place the money in escrow accounts and to disburse the money only upon an order of the court, the funds were placed in custodia legis and Cox was divested of legal title of the funds and title passed to the attorneys as officers of the court.[16]

---

[16]Moreover, while in custodia legis, the property is not subject to levy or attachment in any form. See, e.g., Hardy, 68 Me. at 195. As a result, the trustee, as a hypothetical lien creditor, cannot recover the property for the estate. 11 U.S.C. § 544. In any event, the trustee in this case did not attempt to avoid any interest that was transferred to the custodian pursuant to the state court order nor did the trustee request the turnover

As a result, the funds held in _custodia legis_ did not pass into the bankruptcy estate upon the filing of the bankruptcy petition. As noted by the bankruptcy court, at the commencement of the bankruptcy proceeding, Cox held just a contingent interest to the property held in _custodia legis_, subject to the divorce court's disposition of the property. Thus, only Cox's contingent interest became property of the estate.

Cox contends that the escrow funds could not have been "effectively attached" as the bankruptcy court concluded because the majority of the funds were exempt from attachment under Maine law. As a result, Cox argues, the exempt property in the escrow funds passed unencumbered into the bankruptcy estate when he filed his petition. Cox's argument is flawed. While under Maine law certain property is exempt from attachment, 14 M.R.S.A. § 4422, the property at issue here was not attached. It is true that the bankruptcy court said the property was "effectively attached" when it was placed in _custodia legis_, but it was not _actually_ attached. The bankruptcy court was merely analogizing property held in _custodia legis_ for the benefit and protection of an individual to that individual's attaching of the property in a hypothetical situation to secure a debt. But unlike a mere attachment, the court's decision to place the property in _custodia legis_ divested Cox of

_____

of the property pursuant to § 543.

legal title and left him with only a contingent right to the property.

**D.        Conclusion**

The bankruptcy court's order that the escrow funds could be disbursed as stated in the divorce judgment is **affirmed**.  The bankruptcy court's order denying the disbursement of the Advest IRA to Davis as described in the divorce decree is **reversed** and the case is **remanded** to the bankruptcy court for proceedings consistent with this opinion.

**Dissenting Opinion follows.**

**CYR, <u>Senior Circuit Judge, dissenting</u>**. After apparently accepting the bankruptcy court's cogent interpretation of the applicable legal principles, <u>see</u> <u>In re Cox</u>, 274 B.R. 13, 26-30 (Bankr. D. Me. 2002),[17] the majority predicates its reversal upon the contention that the particular facts of this case warrant extraordinary equitable relief - <u>viz.</u>, the impressment of a constructive or resulting trust upon the otherwise exempt Advest IRA - so as to preclude Cox from unjustly and unilaterally retaining marital property which rightly belonged to the joint marital estate. As its tenuous prediction of Maine law is improvident and its recourse to equitable relief entirely unnecessary, I respectfully dissent.

As the majority must concede, no Maine case law either explicitly or implicitly holds that a cognizable legal or equitable property interest in a marital asset - held exclusively in the name of one spouse - vests in both spouses <u>instanter</u> simply upon the filing of a divorce petition, rather than upon entry of a final decree of legal separation or divorce. Moreover, arguably at least, some Maine decisional law implies quite the opposite. <u>See</u> <u>Long</u> v.

_____

[17]<u>See</u> <u>also</u>, <u>e.g.</u>, <u>Robbins</u> v. <u>Robbins</u> (<u>In re Robbins</u>), 964 F.2d 342, 346 (4th Cir. 1992) (noting that debtor-spouse's separately-held property becomes part of bankrupt estate; non-debtor spouse holds an unsecured claim); <u>In re Anjum</u>, 288 B.R. 72, 76-77 (Bankr. S.D.N.Y. 2003) (same, collecting cases); <u>In re Lawrence</u>, 237 B.R. 61, 80-81 (Bankr. D.N.J. 1999); <u>In re Abma</u>, 215 B.R. 148, 152 (Bankr. N.D. Ill. 1997); <u>In re Palmer</u>, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987).

<u>Long</u>, 697 A.2d 1317, 1321 (Me. 1997) ("The 'marital property' designation grants <u>no</u> <u>present</u> <u>rights</u> in the property <u>during</u> <u>the</u> <u>marriage</u>.") (emphasis added).[18]

The majority predicates its construction upon a presumed legislative intent - motivating the 1972 amendment to the Maine divorce statute - to accord divorcing spouses "more" protection from divestments of property jointly acquired during the marriage. Although this is so, the operative question is how far the Maine Legislature intended to go in according "more" protections. The pre-1972 Maine statute accorded overwhelming weight to a single, formalistic criterion - <u>viz.</u>, which spouse is the named titleholder of the property at issue - and the amended divorce statute undeniably accords more protection to the non-titleholder spouse by even including such separately-held property in the marital estate, and by directing the divorce court to distribute separately-held property to either spouse as well, based upon its consideration of a panoply of equitable considerations aside from the record title.

---

[18]The majority heavily relies upon such cases as <u>Long</u>, which ambiguously advert to the accrual of present rights in the marital estate "on divorce." While it may be arguable that this phrase would permit an interpretation which includes the time period from the filing of a divorce petition to the entry of a final divorce decree, the much more plausible and natural construction is that "on divorce" refers simply to the time commencing with the entry of the final divorce decree. Thus, Davis could have accrued no present rights in the Advest IRA until after it had become property of the Cox bankrupt estate.

I would submit, however, that the majority proceeds upon extremely unstable ground in extrapolating from the nebulous legislative purpose, in order to bolster the "partnership" or "joint enterprise" theory of marriage, to the majority's thesis that the legislature must have intended other - yet more expansive - reforms. Cf., e.g., Lyerly v. IRS, 235 B.R. 401, 404 (W.D.N.C. 1998) ("The [North Carolina] legislature's intent . . . was to create a right to equitable distribution of the marital property, which had not existed up to that time, and to make that right vest at the time of filing for divorce. [The amended divorce statute] did not create any vested rights in particular marital property; it created a right to the equitable distribution of that property, whatever a court should determine that property is.") (emphasis added).

The holdings in those non-Maine decisions which are characterized by the majority as lending "significant support" to its approach - e.g., Walston v. Walston, 190 B.R. 66, 67-69 (E.D.N.C. 1995), and In re Perry, 131 B.R. 763, 766-67 (Bankr. D. Mass. 1991) – are not only exceptionally terse, but rest upon the dubious notion that a constructive or resulting trust is essential to the achievement of an "equitable" result. But see supra note 1 (cataloging dozens of judicial decisions rejecting the Walston-Perry rationale). Normally, we may resort to equitable remedies, such as unjust enrichment and its concomitant remedy of constructive trust, only after concluding that the complainant has or will have no

-43-

"adequate" remedy at law.  See Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 668 (1st Cir. 1984); see also Stanton v. Trustees of St. Joseph's College, 233 A.2d 718, 723 (Me. 1967). The majority, on the other hand, simply posits that since Davis is unable to attach the Advest IRA under the statute, we may conclude instanter that Davis is without any meaningful recourse other than a constructive trust.  As the Bankruptcy Code explicitly contemplates an orderly succession of remedies in these sorts of cases, and Davis has yet to exhaust such available legal remedies, I respectfully disagree.

Davis either had, has, or will have various legal remedies to protect her unvested rights in the Advest IRA.[19]  Even under the rationale adopted by the bankruptcy court, the filing of the Cox bankruptcy petition simply terminated Davis's rights in the

---

[19]Davis has already invoked an important state-law legal remedy.  Even if the Advest IRA is entirely exempt from attachment, see Me. Rev. Stat. Ann. tit. 19-A, § 903(5); see also Me. Rev. Stat. Ann. tit. 14, § 4422(13)(F) (limiting IRA exemption to amount "reasonably necessary for the support of the debtor"), the Maine divorce statute authorizes the divorce court to factor in a party's "economic misconduct" in apportioning the marital property (viz., when effectively setting a value to Davis's unsecured claim), and so the injunction that issues when spouses file a petition for divorce constituted a valuable legal remedy to Davis, see Me. Rev. Stat. Ann. tit. 19-A, § 903(1).  As Cox was enjoined from transferring the Advest IRA funds except for ordinary and necessary personal expenses, and Cox violated the injunction, Davis could have initiated a civil contempt proceeding against Cox, or requested the divorce court to adjust the property settlement to compensate Davis for Cox's dissipation of the IRA.  She elected to avail herself of the latter remedy.

-44-

specific property (<u>viz.</u>, the Advest IRA), <u>see</u> <u>In re Abma</u>, 215 B.R. 148, 151 (Bankr. N.D. Ill. 1997) ("[N]on-debtor spouse's rights in <u>specific</u> <u>marital</u> <u>property</u> were cut off by the bankruptcy filing.") (emphasis added), whereas she retains a $65,250 unsecured claim against the Cox bankrupt estate. <u>See</u> <u>Davis</u> v. <u>Cox</u>, 274 B.R. 13, 23 (Bankr. D. Me. 2002). Thus, Davis may share <u>pro</u> <u>rata</u> in any dividend available to Cox's unsecured creditors. Nonetheless, the majority implicitly concludes that Davis can recover but a pittance, a speculative prediction at best given the mercurial nature of bankruptcy proceedings at such an early juncture. <u>See</u> <u>In re Anjum</u>, 288 B.R. 72, 73 n.1 (Bankr. S.D.N.Y. 2003) ("[T]he [non-debtor spouse's] entitlement to share in the debtor's estate has no value in this no-asset case, but could be of great value in another case.").[20]

Finally, even assuming that the <u>pro</u> <u>rata</u> share realized by Davis were to prove meager, the balance of her $65,250 claim would remain presumptively non-dischargeable in bankruptcy. Bankruptcy Code § 523(a)(15) excepts from discharge any debt

> not of the kind described in [§ 523(a)](5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or

---

[20]Based upon a current assessment of the condition of the estate, the trustee predicted that the dividend could approximate ten-percent, which would result in a $6,525 recovery for Davis.

territorial law by a governmental unit unless —

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

Thus, Cox would have to carry the burden of proving one of these two criteria in order to obtain a discharge of the property-settlement claim held by Davis. See In re Lawrence, 237 B.R. 61, 83 (Bankr. D.N.J. 1999). The "ability to pay" factor in Bankruptcy Code § 523(a)(15)(A) enables the bankruptcy court to consider the present and future prospects for repayment from Cox's expendable property, including any assets, previously acquired in contravention of the divorce court injunction, which remain in Cox's possession, see supra note 3, or from Cox's disposable income, including future wages. See Feldmann v. Feldmann (In re Feldmann), 220 B.R. 138, 145-46 (Bankr. N.D. Ga. 1998). Were Cox unable to

-46-

sustain this substantial burden of proof, the obligation due Davis would remain undischarged, notwithstanding a general discharge in bankruptcy.  See Bowden v. Grindle, 675 A.2d 968, 972-73 n.2 (Me. 1996) (noting that one element of "unjust enrichment" claim is inequitable retention of benefit "without payment") (emphasis added).  Consequently, the significance of this potential post-petition remedy under subsection 523(a)(15) cannot be ignored.

Moreover, Bankruptcy Code § 523(a)(15) imports the same types of equitable considerations and balancing requirements as undergird the state-law remedies of constructive and resulting trusts, in many respects paralleling the "economic misconduct" inquiry mandated under the Maine divorce statute's scheme for equitable distribution.  See supra note 3.  Thus, assuming arguendo that Cox deliberately engaged in financial shenanigans with the Advest IRA, he cannot anticipate any considerable windfall in bankruptcy.[21]

The majority proposes that the bankruptcy court ruling effectively nullifies the divorce decree, and offends the well-accepted principles that (i) state law normally defines property rights in bankruptcy, and (ii) the state divorce court possesses a

---

[21]Moreover, even assuming Davis were unable to prevail under § 523(a)(15), she could pursue a non-dischargeability ruling under § 523(a)(6) (excepting from discharge any debt "for willful and malicious injury by the debtor"), based upon Cox's prior violations of the divorce court injunction.  See Siemer v. Nangle (In re Nangle), 274 F.3d 481, 484 (8th Cir. 2001) (noting that contempt judgments may be excepted from discharge under § 523(a)(6)).

more specialized expertise to undertake the equitable distribution of marital property than does a federal bankruptcy court. But, of course, the bankruptcy court did defer to the state court's expertise when it granted the first motion to lift the automatic stay - filed by Davis - while at the same time explicitly stating that "relief from the stay is not granted to implement any property settlement absent further order of this court." (Emphasis added.)

Just as state courts possess special competence in determining equitable marital-property distributions, so too it cannot be gainsaid that they possess a specialized expertise in declaring state law. In determining its equitable property division, the divorce court - though presumably aware that Cox could exempt the entire IRA account pursuant to Maine law - declined the trustee's invitation to reach the difficult state-law questions presently before us: whether Davis acquired an equitable property interest in the Advest IRA at the time she filed for divorce, or whether the equities in this case mandated that Cox hold the IRA in constructive or resulting trust for Davis. Davis did not appeal from the divorce judgment on the ground that it failed adequately to define the nature of her state-law rights in the IRA. Once the state court has pronounced the spouses' respective distributive rights, the Bankruptcy Code governs the ramifications of these pronouncements in the context of the Cox bankruptcy case.

Although one may sympathize with Davis in the present predicament, as well as with the majority's conscientious intention to minimize its impact, the intervention of a bankruptcy petition very frequently entails unfortunate consequences for the most innocent of parties. Plainly and understandably, then, Davis would prefer the more immediate, convenient, and predictable remedy afforded by a constructive or resulting trust. Yet somewhat lesser alternative remedies at law - even if merely adequate - take precedence over equitable remedies, see Infusaid Corp., 739 F.2d at 668, lest equitable relief become mere redundant surplusage. Accordingly, once Congress explicitly prescribes legal remedies under the Bankruptcy Code for spouses with property settlement claims, courts must recognize that such settlements presumptively are to be treated as "claims" in bankruptcy. Consequently, at a minimum the courts are to defer any decision as to whether to seize upon extraordinary state-law equitable remedies until such time as a spouse has unsuccessfully exhausted all such remedies. At that juncture, the bankruptcy court can then address the issue competently.

For the foregoing reasons, I would hold that the Cox IRA became part of the bankrupt estate prior to the Davis property settlement. See supra note 1. As I believe the bankruptcy court decision should be affirmed, I respectfully dissent.