In re MID–VALLEY, INC., et al., Debtors.

No. 03–35592–JKF.

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 11, 2004.

Jeffrey N. Rich, Kirkpatrick & Lockhart
LLP, New York City, for Debtor.

Joseph S. Sisca, Pittsburgh, PA, for U.S. Trustee.

## MEMORANDUM OF ORAL OPINION READ INTO THE RECORD ON FEBRUARY 11, 2004

JUDITH K. FITZGERALD, Chief Judge.

Before the court are three motions to dismiss these jointly administered cases as bad faith filings. The motions were filed on behalf of certain insurers. Also filed on behalf of certain insurers is an objection to the appointment of Professor Eric D. Green as the future claimants' representative. I will refer to that as the FCR from here on. The Debtors assert that the certain insurers have no standing to bring these motions. For the reasons which follow I find that the certain insurers do not have standing to raise the issues or the requested relief. They are not creditors of these Debtors; rather, the Debtors are creditors of the insurers. In addition, the insurers have suffered no injury in fact and are not threatened with injury. A finding that the insurers have no standing to bring these motions is *not* an adjudication that they have no standing at all with respect to these cases but only that they have no standing with respect to the issues raised in the motions. The certain insurers' interests will be protected by the plan process when they will have the opportunity to object to the Plan to the extent that it affects their interests. The extent of the insurers' participation in the plan process will not be addressed today. All I am addressing today is the certain insurers' standing to seek to have these cases dismissed and to object to the appointment of Professor Green as the FCR.

These cases were filed as a prepackaged bankruptcy. The insurers allege that the Trust Distribution Procedures will violate certain policy provisions in the future and that the Plan will prevent the certain insurers from raising coverage defenses. Specifically, the certain insurers complain about § 10.1 and § 11.4 of the Plan. Section 10.1 falls under Article X, captioned Injunctions, Releases, and Discharge. 10.1 states:

*Discharge and Release.* On the Effective Date, to the fullest extent permitted under applicable law, the rights provided in the Plan shall (a) discharge the Debtors and the Reorganized Debtors and (b) release each of the Halliburton Entities and the Harbison–Walker Entities, in the case of both (a) and (b), from any and all Asbestos Unsecured PI Trust Claims and Silica Unsecured PI Trust Claims, whether or not (i) a Proof of Claim based on such claim was filed or deemed filed under section 501 of the Bankruptcy Code, (ii) such claim is or was Allowed under section 502 of the Bankruptcy Code, (iii) such claim was listed on the Schedules of a Debtor, or (iv) the holder of such claim voted on or accepted the Plan; provided, however, that notwithstanding anything in this article 10.1 to the contrary, nothing herein shall affect, limit, or otherwise impair any right of a Halliburton Entity against any Asbestos/Silica Insurance Company.

Section 11.4 falls under Article XI, captioned Matters Incident to Plan Confirmation. 11.4 reads:

*Asbestos/Silica Insurance Actions and Preservation of Insurance Claims.* Asbestos/Silica Insurance Actions shall be preserved pursuant to this provision for prosecution by the Reorganized Debtors. On or after the Effective Date, the Reorganized Debtors shall be entitled, in their sole and complete discretion, to compromise or settle any and all Asbestos/Silica Insurance Actions and extend the Asbestos/Silica Insurance Company Injunction to any Asbestos/Silica Insur-

ance Company that becomes a party to an Asbestos/Silica Insurance Settlement Agreement. Extension of the Asbestos/Silica Insurance Company Injunction shall be accomplished by amending and/or supplementing Exhibit 2 hereto to add the name of the Settling Asbestos/Silica Insurance Company and, if requested by the Settling Asbestos/Silica Insurance Company, an order of the Bankruptcy Court. Except as for the rights of the Asbestos PI Trust under the Asbestos PI Trust Additional Funding Agreement, the Reorganized Debtors shall have the right to retain all Asbestos/Silica Insurance Action Recoveries. The Debtors' discharge, and the Halliburton Entities' and the Harbison–Walker Entities' release pursuant to the terms of this Plan, shall neither diminish nor impair the rights of a party under any Asbestos/Silica Insurance Policy or the rights, if any, of any Asbestos/Silica Insurance Company to assert any claim, defense, or counterclaim in connection therewith.

That's the end of the quote. The particular grounds raised by the insurers relate to plan confirmation issues but objections to the Plan are not appropriate at this juncture. This case was filed on December 16, 2003, with a plan which, as proposed, does not adjudicate insurers' liability. The insurers are not creditors. They are not being asked or compelled to do anything at this point in the case. They have shown no harm.

Although the Plan includes a reference to "Settling Asbestos/Silica Insurance Company" in a paragraph heading, Debtors assert in their pleadings that they "intend to fund their obligations under the Plan without any assistance from the certain insurers and are willing to bear the entire and sole risk that they might be unable to recover from the certain insurers

some or all of the funds paid out under the Plan." *See, for example,* Debtors' Brief Regarding Lack of Insurer Standing to Raise and be Heard on Issues Related to the Debtors' Reorganization Cases, Dkt. No. 229, at page 11. Even if the certain insurers' rights will be impaired by the Plan, objections to the Plan or motions to dismiss on the basis that the Plan is unconfirmable are not ripe. The gist of the certain insurers' argument is that these chapter 11 cases have not been filed in good faith and that without advocacy by the certain insurers through the vehicle of these motions, the matter will never be adjudicated inasmuch as the Debtors and the asbestos creditors and the FCR have no incentive to do so. For reasons which follow, I find that the certain insurers have no standing to seek dismissal.

*Regarding the motions to dismiss the case*

The certain insurers have alleged that the negotiations leading up to the Plan violated insurance policy provisions. While that may be a defense to coverage, it does not confer standing on them at this point. They are not asked to pay claims under the Plan. The Debtors will pay claims directly. The Debtors are not seeking contributions by insurers. Insurers argue that they have standing because they are injured by the fact that under some insurance contracts certain insurers have the right to participate in the settlement process that Debtors engaged in with the asbestos claimants. This argument is irrelevant and without merit with respect to standing to move to dismiss. At best, the assertion provides a defense to coverage but does not provide the insurers with a "claim" as defined in 11 U.S.C. § 101(5). Furthermore, the fact that the Debtors have settled with asbestos claimants doesn't mean that the certain insurers must pay those claims. Insurers retain the right to challenge their obligation to

pay claims regardless of what Debtors agreed with the claimants. As I read the Plan, there is no requirement that non-settling insurers pay in violation of their policies. Rights are preserved as to non-settling insurers. If and when called upon to pay, the certain insurers can raise whatever defenses they have.

The certain insurers argue that they will be bound in coverage litigation by a finding that the bankruptcy cases were not filed in bad faith. The filing of these cases in bad or good faith is irrelevant to whether the certain insurers have an obligation to pay under the terms of their policies. If the insurers believe that the Plan violates their rights under their policies, they will have an opportunity to object to plan confirmation. The insurers also argue that because the Plan provides that Debtors will pay X dollars to settle their asbestos liability, the insurers' obligation to pay is necessarily determined by that finding. Even assuming this conclusion is correct, and I do not find that it is, it still does not establish that the insurers must pay that amount. The insurers are not harmed by a requirement that Debtors fund a plan of reorganization when that requirement does not include a mandate to certain insurers to contribute to Plan funding regardless of the terms of the insurance policies, defenses to coverage, and the like. That is, even if the Plan were to provide that the insurers' liability is the amount that the Plan says Debtors will pay, the Plan does not say that the insurers cede coverage defenses or contractual rights or anything else to which their policies might entitle them.

The insurers object because the Plan provides that Debtors will be obligated to pay a certain amount to asbestos claimants which, in the insurers' view, should be less than what Debtors' settlements and plan provide. This, the insurers argue, gives them standing because the amount of their potential exposure is set by that Plan provision. I disagree. The certain insurers' ultimate exposure is capped only by their policies. Their policies are not affected by the Plan as currently constituted. Likewise, Debtors' negotiated settlement with asbestos creditors does not implicate the policies because neither insurers' liability nor coverage defenses are affected. The certain insurers are not injured by the fact that Debtors agree with asbestos claimants to limit Debtors' liability. The insurers will never be called upon to pay out money on claims that are not submitted to them. At best, the only effect of the settlement upon insurers is that they will not have claims submitted for more than the settlement amounts. Their defenses to coverage remain in effect.

The insurers next argue that the case should be dismissed because Debtors by their own admission are solvent and are not distressed by the existence of asbestos liability. This goes to the merits of the insurers' motion to dismiss but they do not have standing to raise it. The insurers' position is that Debtors' settlement affects them because, the insurers believe, Debtors will use that settlement (and any plan confirmation order which of necessity or by implication approves it) in coverage litigation but that is not an issue for this case at this juncture. The Bankruptcy Code does not require that a debtor be insolvent. The fact of solvency does not require a finding that the bankruptcy filing was in bad faith. In *In re SGL Carbon Corporation*, 200 F.3d 154 (3d Cir.1999), the Court of Appeals for the Third Circuit was faced with the issue whether, on the facts of that particular case, the filing of a chapter 11 by a financially healthy company comported with the Bankruptcy Code when the company was facing "potentially significant civil antitrust liability". *Id.* at

156. The court addressed the threshold question of whether chapter 11 included a good faith filing requirement and concluded that "a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1126(b) unless it is filed in good faith." 200 F.3d at 162. However, the certain insurers have no standing to raise the issue as they are not affected by the filing of these cases. The certain insurers make much of Debtors' statement that they can and will pay all present asbestos claims and will provide for payment of future asbestos claims. However,

the Bankruptcy Code does not require specific evidence of insolvency for a voluntary Chapter 11 filing. But SGL Carbon cites no case holding that petitions filed by financially healthy companies cannot be subject to dismissal for cause. At any rate, SGL Carbon's ability to meet its debts is but one of many factors compelling the conclusion it did not enter Chapter 11 with a valid reorganizational purpose.

We do not hold that a company cannot file a valid Chapter 11 petition until after a massive judgment has been entered against it. . . .

*Id.* at 164.

▆▆▆ Section 1112(b) governs dismissal of chapter 11 petitions and provides for dismissal "for cause" if it is in the best interests of the *creditors and the estate.* 11 U.S.C. § 1112(b); *In re SGL Carbon Corp.,* 200 F.3d at 159. The certain insurers are not creditors. They do not represent or constitute the estate. They have no claims against the estate. They have no financial or ownership interest in the estate. In short, they have no standing to raise § 1112(b).

In addition, as noted in *SGL Carbon,* § 1112(b) "neither requires nor prohibits imposition of a 'good faith' requirement on Chapter 11 petitions." 200 F.3d at 160.

The factors leading to dismissal as listed in §˙1112(b) are

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

None of these factors apply. The grounds relied on by the insurers, i.e., prepetition negotiations violated the policies, the settlement amount affects their interests, do not confer standing to move to dismiss. The requirement of good faith is an equitable one geared toward "avoidance of the consequences of economic dismemberment and liquidation, and the preservation of ongoing values in a manner which does equity and is fair to [the] rights and interests of the parties affected". *In re SGL Carbon Corp.,* 200 F.3d at 161. The insurers are not "parties affected." The debtor must come to the court with clean hands. (Citing the same reference to *SGL Car-*

*bon.*) The Court of Appeals concluded in that case that a good faith standard is supported by the purposes underlying Chapter 11 which involves a

> balancing process between the interests of debtors and creditors which ... is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way....

This is at pages 161 and 162 of *SGL Carbon* and it is quoting in turn *In re Little Creek*, 779 F.2d 1068, 1072 (5th Cir. 1986). I do not disagree with this pronouncement by the Court of Appeals for the Fifth Circuit but, again, the court's focus is with respect to *creditors*. The certain insurers are not creditors of these Debtors; they are debtors to the Debtors. Furthermore, at this time, they have not been called upon to pay in the context of this bankruptcy case. Thus, even if the limits of Debtors' liability as proposed in the Plan are more than what the certain insurers think the limits should be is irrelevant to the issue of good faith. The certain insurers' liability is governed by their policies, not by what Debtors and asbestos claimants resolve among themselves in an agreement to which insurers have not consented. It is also irrelevant to the insurers' standing. The fact that Debtors agree to pay asbestos claimants a certain amount does not mean that the insurers are bound to pay that same amount. The certain insurers' obligation to pay will be determined in coverage litigation. It is not affected by this bankruptcy case inasmuch as no insurance proceeds are sought to be put into the Asbestos PI Trust.

 While the certain insurers are a party in interest to the extent they face liability that could potentially arise from Debtors' payment of asbestos claims, there is no case in controversy at this time.

One element of the "bedrock" case-or-controversy requirement is that plaintiffs must establish that they have standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). On many occasions, we have reiterated the three requirements that constitute the " 'irreducible constitutional minimum' " of standing. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). First, a plaintiff must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)(internal quotation marks and citation omitted). Second, a plaintiff must establish "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] some third party not before the court.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)(quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Third, a plaintiff must show the " 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Stevens, supra*, at 771, 120 S.Ct. at 1858.

That's the end of the quote from *McConnell v. Federal Election Commission*, —— U.S. ——, 124 S.Ct. 619, 707, 157 L.Ed.2d 491 (2003). In this case, at this time, the certain insurers have no injury in fact. The injury they assert will befall them is not imminent. They are not called upon to do

anything in the case. The fact that Debtors agreed to pay more to asbestos claimants to settle their liabilities than the certain insurers think Debtors should have agreed to does not create an injury to the certain insurers. The insurers retain rights to dispute whatever they may be asked to pay in future proceedings. Moreover, Debtors' agreement with asbestos claimants to a limit of liability does not bind the certain insurers to pay that same amount. The certain insurers can raise challenges at the appropriate time and place. The insurers' liability under their policies is untouched. Whether the Debtors' failure to include the certain insurers in settlement discussions that the Debtors conducted with asbestos claimants or their attorneys constitutes a breach of the policy is not before this court and is certainly not ripe for decision as the insurers are not yet called upon to pay. Dismissal of the bankruptcy cases will not remedy the alleged injury.

The London Market certain insurers filed a statement of position at Dkt. No. 233, stating that they have standing to "participate in this action if confirmation of the proposed plan will in any way affect their rights". This is Dkt. No. 233 at 1. The certain insurers may have standing to address confirmation issues. The insurers argue that because of the bankruptcy their liability will be determined to be co-extensive with the Debtors'. This is a fallacy. Debtors agreed to pay what they agreed to pay. The agreement does not determine the insurers' liability or any coverage issue.

The insurers cite *Federal Communications Commission v. Sanders Bros. Radio Station*, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), for the proposition that under FCC communications law a radio station owner could raise any argument to protect his economic interest in blocking another station from entering the market. I do not think that *Sanders* can fairly be read for that proposition. What the Supreme Court said was:

1. FCC licensees do not have a property right as a result of the granting of a license. That's at page 475, 60 S.Ct. 693.

2. The fact that competition between a new station and an existing station might cause economic loss to the existing station is not to be "entirely disregarded" by the FCC in determining whether to grant a license. That's at pages 475–76, 60 S.Ct. 693.

3. Congress could confer standing to appeal on one likely to be financially injured by the issuance of a license. At page 476, 60 S.Ct. 693.

4. Even though economic injury to the existing station owner was not an issue before the FCC it was within Congress's power to confer standing to appeal. That's at page 477, 60 S.Ct. 693.

In *Sanders* the Supreme Court made clear that under the applicable statute economic injury to a current radio station owner was not grounds for denying a license to a competitor but that the current station owner nonetheless had standing, under the statute, to appeal the FCC's decision. *Sanders* is distinguishable from the situation here. The insurers have shown no economic injury. Their assertion that Debtors' settlement somehow prejudices their interests because it lowers the maximum liability that could be sought against them by the settled claims is not an economic disadvantage nor is it economic prejudice. Federal jurisdiction is premised upon an injury. A benefit or improvement in position is not an injury. The insurers cannot transform this benefit into an injury by asserting that the benefit could have been greater if Debtors had agreed to a different settlement. An enti-

ty without an injury has no standing to sue, or, in this case, to challenge the bankruptcy filing at bench.

*Regarding the Future Claims Representative*

With respect to the objection to the appointment of Professor Green, Hartford Accident and Indemnity Company and certain of its affiliates, which I will refer to as the "Hartford Affiliates", point out that Debtors have represented that they could "pay all anticipated future valid asbestos and silica claims in full as those claims are liquidated." That's from the Objection of Hartford Accident and Indemnity Company and Certain of its Affiliates to Debtors' Application for an Order Appointing a Legal Representative for Purposes of Sections 105 and 524(g) of the Bankruptcy Code, at Dkt. No. 32, page 3. However, the Hartford Affiliates assert, the proposed channeling injunction provides that future claims will be paid only from shares of Halliburton stock, which is just 13 percent of the company, and from $700 million of contested insurance proceeds if certain conditions are met, that's at pages 3 to 4 of docket number 32, and that, while current asbestos creditors get cash, future claimants' interests are not protected because, *inter alia,* the value of the stock in the future is uncertain. This is quite clearly a confirmation issue regarding application of § 524(g) and the parity of treatment provisions of the Bankruptcy Code. For reasons explained later in this opinion, I find that the insurers have no standing to raise the pecuniary interests of future claimants. Furthermore, the extent of the insurers' liability for future asbestos claims is encompassed in their policies and limited by them.

The insurers also assert that Professor Green is disqualified from performing the duties of an FCR because (1) it is the Court's and not the Debtors' place to appoint the FCR, (2) Professor Green was selected by current asbestos claimants and paid by Debtors and the interests of these parties are adverse to those of the future claimants; (3) as a result, Professor Green had incentive to cooperate in the proposed Plan rather than to question why any bankruptcy filing was necessary, and (4) he could not improve the future claimants' position through the Plan process therefore, (5) he cannot assess the plan objectively now; and (6) further, he has a financial stake in its confirmation. Again, I find that the insurers have no standing to raise the interests of the asbestos claimants, either present or future. First, the propriety of Plan provisions for future claimants is a matter for Plan confirmation. Second, the certain insurers' interests are adverse to *all* asbestos creditors' interests, present and future. Third, the effort of the certain insurers to suggest that Professor Green is not disinterested, without specifically so alleging, fails. Lack of disinterestedness due to representation of a creditor is a subject which can be raised only by another creditor or the United States Trustee. 11 U.S.C. § 327(c). The certain insurers are neither creditors nor the U.S. Trustee. Moreover, Professor Green does not and did not represent the future claimants but, rather, stands in the shoes of the future demand holders as their representative. In other words, Professor Green is not their attorney, he is their alter ego.

The certain insurers asserted in argument before this court on January 13, 2004, that "every carrier at least to the extent it may settle has an interest in insuring that we have an FCR who is free from any conceivable challenge in the future that he or she is tainted ...." Transcript of January 13, 2004, at 91. The certain insurers assert that they have standing under an exception to the rule

that one cannot raise another's rights. In this regard they cite *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293 (3d Cir.2003). That case states:

> In general, a litigant may assert only his own legal rights or interests, and can not "rest a claim to relief on the legal rights or interests of third parties."

I'm going to omit the citations that the Court uses to other cases. Continuing the quote:

> The Court has recognized a limited right of litigants to bring actions on behalf of third parties only when the following three criteria are met: (1) the litigant has suffered an injury in fact giving him a sufficiently concrete interest in the outcome of the issue; (2) the litigant has a close relation to the third party; and (3) there exists some hindrance to the third party's ability to protect his own interests.

Again, I'm omitting the quotations to Supreme Court authority. Continuing the quote:

> This well-settled precedent makes clear that it is only possible to find third party standing when there is also an injury in fact alleged by the first party plaintiff.

That's at 322 F.3d at 298 to 299. None of the three elements apply in this case. First, the certain insurers have not been injured by the appointment of this particular FCR. That event has no effect on the certain insurers who retain the ability to contest use of insurance proceeds to pay claims that do not meet the criteria for such payment. If that situation arises, the certain insurers may address the issue in coverage litigation. Their money is not in this plan. The insurers are not at this point being asked (and cannot be compelled against their will) to contribute to the Plan.

Second, the certain insurers do not have a "close relation" to the asbestos claimants and, in fact, their interests are entirely adverse to those of the asbestos claimants. The insurers' role is to pay claims that are appropriate to be paid under the terms of their policies and to challenge those they believe are not qualified for insurance payment. The motions to dismiss and the challenge to the appointment of the FCR illustrate the insurers' adversity to the asbestos claimants. No asbestos claimant contests the FCR's appointment. In fact, no creditor or party in interest does so. The insurers cannot raise the future asbestos claimants' interests and attack them in the same breath.

Third, there is no hindrance to the ability of future asbestos claimants to protect their own interests. The insurers' basic premise is that the FCR can not represent the futures because he has been and will be paid by Debtors and will be paid by the Asbestos PI Trust, when it's formed, and therefore he has no incentive to represent the future claimants' interests. However, in a bankruptcy case, all representatives appointed by the court are compensated from the estate. The FCR in this case provided a service standing in the shoes of unknown future claimants at the expense of the Debtors. Nothing untoward can be found by virtue of the fact of that arrangement, in and of itself.

Moreover, the propriety of Plan provisions governing payment to future claims will be addressed at plan confirmation. The insurers are not the protectors of the future claimants, even under *Storino.* The insurers' interests are adverse to those of the future claimants and the insurers cannot represent the future claimants, or act on their behalf, any more than any other adverse entity could. That the proposed FCR is being paid by the Debtors does not, *a fortiori,* render him unable to protect the interests of his constituency. If

that were the case there could be no FCRs in any asbestos case since all are paid by the debtor until the plan is confirmed. The Plan's proposal to retain the FCR to work with the trustees of the Asbestos PI Trust is not a mandate for his removal or the denial of his appointment.

The insurers argue that *In re Amatex Corporation*, 755 F.2d 1034 (3d Cir.1985), *rehearing in banc denied*, although a case decided well before 11 U.S.C. § 524(g) was enacted, is applicable to this situation because the Court of Appeals looked at the fact that future claimants were not present creditors and may never become creditors but found that they still had an interest sufficient to entitle them to a voice in the reorganization proceedings. To the extent that *Amatex* has any bearing on this bankruptcy, its concerns are addressed here because the FCR is the representative of future claimants. The FCR gives future asbestos claimants a voice in the reorganization proceedings. The certain insurers do not believe that Professor Green is the proper voice but the certain insurers have no standing to raise the interests of future claimants nor standing to be their voice in the reorganization. Thus, *Amatex* is not violated and the certain insurers do not have standing under the exception reiterated in *Storino* to raise future claimants' interests.

In conclusion, I find that the certain insurers' interests are not affected by the filing of this case, either directly or indirectly. They are not a "person aggrieved" as their pecuniary interests are not directly, indirectly or adversely affected. *See Davis v. Cox*, 356 F.3d 76, 92, n. 15 (1st Cir.2004). The fact, in and of itself, that Debtors may be solvent is an insufficient basis to dismiss the bankruptcy case and the certain insurers have no standing to raise the issue as their rights and interests are not affected. I do not agree that the fact that Debtors settled with current asbestos claimants determines the certain insurers' obligation to pay in later coverage litigation. The insurers retain all defenses to coverage.

For all these reasons I find that the insurers do not have standing to move to dismiss this case on the grounds asserted. They also do not have standing to object to the appointment of the FCR as their interests are adverse to those of the asbestos creditors and future asbestos claimants. Further, there is no relationship between the insurers and the asbestos claimants that permits application of the exception to the rule that one cannot represent a third party's interests.

I note for the record that counsel for the Hartford Affiliates, with notice to the official service list, by letter dated January 29, 2004, provided a copy of Judge Newsome's opinion dated January 26, 2004, in the ACANDS, Inc. bankruptcy case, Bankruptcy No. 02–12687 pending in the District of Delaware. Judge Newsome refers to Travelers' challenge at plan confirmation to a prepetition settlement with asbestos creditors as it was incorporated into the plan and finds that the plan could not be confirmed for reasons associated with the prepetition settlement. As stated earlier, the certain insurers' standing for plan confirmation purposes is not at issue with respect to these motions to dismiss or with respect to the challenge to the appointment of the FCR. Thus, I am not called upon to address any issue raised by the ACANDS opinion at this juncture. For these reasons, the certain insurers' motions to dismiss the case will be denied and their objections to the appointment of Professor Green as the FCR are overruled.

Oral request for stay pending appeal is denied.